# Leidy *versus* Proctor.

1. A purchaser of land at sheriff's sale upon receipt of his deed, is vested with the right of possession as well as the right of property, and he may lawfully enter immediately, provided he does so peaceably.

2. The Act of June 16th 1836, which provides for a three months' notice and a summary proceeding before two justices, does not abridge but is in addition to the right of the purchaser to take peaceable possession, or to bring ejectment.

3. A purchaser at sheriff's sale who gave three months' notice under the Act of 1836, and afterwards, within the three months, entered against the consent of the former owner who remained in possession, but without violence, is not liable as a trespasser in an action brought by the former owner.

4. Timber which had fallen at the date of the delivery of the sheriff's deed, but had not been converted into saw-logs, rails, etc., passes to the purchaser as part of the realty.

5. What was once part of the realty remains so on being detached, until the owner of the freehold by his act or election gives it a different character.

March 25th 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Montgomery county*: Of January Term 1881, No. 20.

Trespass, *quare clausum fregit*, by William Leidy against Joseph Proctor. Plea not guilty.

[Leidy v. Proctor.]

On the trial, before Ross, P. J., the testimony showed the following facts:

By virtue of an execution upon a judgment obtained by one Albertson against William Leidy, .a certain farm belonging to Leidy, and in his possession, was sold at sheriff's sale on August 21st 1878, to Joseph Proctor, and a sheriff's deed was acknowledged to him therefor on September 10th 1878. On September 12th, Proctor served on Leidy a written notice to surrender possession of the premises within three months. About the 20th of September Proctor entered on the premises, against Leidy's consent, but peaceably, and ploughed part of a field. Again, on September 23d, he peaceably entered, with a large number of men, and, in pursuance of advertisements, held a public sale of certain wood lots, with standing and fallen timber thereon. By the terms of this sale, possession was to be delivered to the purchasers on April 1st 1879, and no fallen timber was to be removed prior to that date. On October 2d 1878, Leidy brought this action.

Ross, P. J., charged the jury substantially as follows:

" It is somewhat singular that from the earliest days until now this question, although constantly arising, never has been decided by the court of last resort. Prior to 1802, when a man bought land at sheriff's sale, the only remedy by which he could obtain possession was an action of ejectment. This was a long and tedious process. The legislature in 1802, passed an act providing that the purchaser, after his deed had been acknowledged, may give notice that he desires possession in three months, and, except in certain cases, may obtain summary possession after that period in a proceeding before two justices. In 1836 the framers of our civil code re-enacted substantially the Act of 1802.

["Now the first question of law distinctly arises and that is, whether the Acts of 1802 and 1836 take away the right of the purchaser at sheriff's sale to bring an action of ejectment. I distinctly charge you that they do not, that the right to bring ejectment exists, that the right to the summary remedy exists, that either is at the option of the party, and that either is a remedy against the unjust detention spoken of in this preamble.] Now then, as an action of ejectment was a remedy which provided for the mesne profits, that is the accruing fruits of the land during the period of unjust detention, as the Acts of 1802 and 1836 are cumulative remedies, and as the act of 1836 distinctly provides that in case the finding is for the petitioner, the jury shall assess such damages as they shall think right against such defendant or person in possession 'for the unjust detention of the premises,' I say to you distinctly and positively that the unjust detention begins from the date of the acknowledgment of the sheriff's deed, as well under the summary remedy provided by the Acts of 1836 and 1802, as it does under the action of ejectment. [The next inquiry is, whether

[Leidy *v.* Proctor.]

during the three months the plaintiff, having adopted the summary remedy against the defendant or owner, may lawfully enter upon the premises; or rather, to state it more accurately, whether his entry upon the premises without a breach of the peace and without an 'ouster,' that is a putting out of the owner or occupier, is a trespass ? I distinctly charge you that it is not, and I say to you that where a man has purchased at sheriff's sale, and enters upon the premises after the deed is acknowledged, either to gather crops, to plough the ground, to cut down timber, or do any other act of ownership, he is no trespasser, unless such act of his is done with violence and the strong hand, amounting to a breach of the peace. Therefore when Mr. Proctor entered upon these premises and ploughed this field, having committed no act of wanton violence, having been guilty of no breach of the peace, being the holder of the sheriff's deed, vested with the right of property, by virtue of that right and that deed vested with the right of possession, he was no trespasser, and being no trespasser he could commit no injury to the defendant, and there can be no damages upon that ground. Therefore there can be no recovery here. Then, again, when he held a public sale upon the woodland he was vested with the same rights. He was no trespasser, and therefore his business there and his sale of the property, even although he had given the immediate possession to his vendees and entered upon these wood lots and cut wood during the three months, was no trespass and therefore no damage done. The entry at that time would not be found to support any verdict for the plaintiff. * * *

["I charge you distinctly that all the timber that lay upon the ground before the sheriff's sale and which had fallen did not pass to the purchaser, Mr. Proctor, but was the personal property of Mr. Leidy. I do not think that this is material in this case for the reason that there is no evidence here, not a scintilla, that Mr. Proctor ever carried away a single stick of this fallen wood. If others came in and took it they are liable for their trespasses. It is not his. Even if they did it under a sale from him it would make no difference whatever in this case, for the conditions were that none of it was to be taken until the first of April next succeeding, and besides, Mr. Leidy declares that in pursuance of instructions from Mr. Corson he obtained a portion of that wood which was still lying there even as against Mr. Proctor's tenants. * * * If you believe the evidence given by both sides all around in this case, under the law as I have declared it to you, it will be your duty to render a verdict in favor of the defendant."]

Verdict and judgment for the defendant. The plaintiff took this writ of error, assigning for error the portions of the charge above quoted in brackets.

*George N. Corson*, for the plaintiff in error.—The judge virtually

[Leidy v. Proctor.]

ignored the Act of 1836, which we claim gives an unfortunate owner of land sold by the sheriff three months in which to move his goods and find a new home. If the purchaser has a right to enter immediately on receiving his deed, the statute requiring three months' notice is of no effect. An owner or a tenant cannot be ejected without due process of law. Where a remedy is provided by statute, the directions of the statute must be strictly followed: Act of March 21st 1806. Where the statute and the common law differ the latter must give way: 1 Black. Com. 88. The judge charged that "the timber that lay upon the ground before the sheriff's sale did not pass to the purchaser," yet he instructed the jury that the defendant who entered and sold it was not a trespasser.

*H. K. Weand*, for the defendant in error.—A purchaser at sheriff's sale has the title and the right to possession immediately on the acknowledgment of the sheriff's deed. He may take possession, provided he does not commit or provoke a breach of the peace. If he is prevented from entering peaceably he may bring ejectment, or serve notice under the Act of 1836, and on recovery, in either case, he is entitled to damages for the unjust detention by the party in possession, who is, in law, a trespasser: Barnes v. Dean, 5 Watts 543; Snavely v. Wagner, 3 Barr 275; Kellam v. Janson, 5 Harris 467. Ejectment to recover possession of lands bought at sheriff's sale has frequently been maintained since the Act of 1836: Drake v. Brown, 18 P. F. Smith 223; Dunlap v. Cook, 6 Harris 454. Remedies provided by statute do not affect the right of redress by act of the party, but are in addition thereto: Overdeer v. Lewis, 1 W. & S. 90; Rich v. Keyser, 4 P. F. Smith 86; Snyder v. Carfrey, Id. 90. In a lease requiring three months' notice, the landlord, or a purchaser at sheriff's sale, may take possession at the end of the term without notice if he can do so peaceably.

Mr. Justice GORDON delivered the opinion of the court, May 2d 1881.

By virtue of a certain writ or writs of venditioni exponas, issued out of the Court of Common Pleas of Montgomery county, at the suit of J. M. Albertson & Sons against William Leidy, the plaintiff in the present suit, the land of the said Leidy was sold by the sheriff to the defendant, Joseph Proctor, and a deed made therefor, which was duly acknowledged and delivered to him on the 10th of September 1878. From this period he was the absolute owner of the land, and though Leidy continued in the actual possession, that possession was wrongful; the right thereto was in Proctor. This very obvious legal proposition I do not understand to be disputed, but if Proctor had both the title and right of possession,

[Leidy *v.* Proctor.]

why might he not lawfully enter ?   Or how does it come, that in the exercise of a lawful right, it is possible for him to be subjected to those pains and penalties to which one whose entry is without right ought alone to be exposed ?   Had Leidy's possession been by a tenant, immediately upon the delivery of the sheriff's deed, Proctor, by force of the statute, would have become the landlord of that tenant, and had Leidy after that entered upon the land, he would have been a trespasser.   Hence, it was held, in the case of St. Clair's Heirs *v.* Shale, 8 Harris 105, that a sheriff's vendee might lawfully obtain possession of the premises by the attornment of the tenant of defendant in the execution.   But if the law thus casts the immediate right of possession on the sheriff's vendee, in the one case, why not in the other ?   Of course, to all this there is but one answer, and that is the one made use of by the plaintiff —that under the Act of 1836, the defendant is entitled to possession for the period of three months after the notice to quit.   The learned judge of the court below thought this position unsound, and we are of the opinion he was right.   The summary process given by the Act of 1836 was certainly not intended for the benefit of the defendant in the execution—the language of the act negatives such an idea; for "in case of a finding for the petitioner, as aforesaid, the jury shall assess such damages as they shall think right, against such defendant or person in possession, for the *unjust* detention of the premises."   Clearly the statute was not intended to favor one whose possession it assumes to be unjust; one who maintains such possession without right; it must therefore have been intended for the benefit of the purchaser at the sheriff's sale. Because he may not be able, by reason of the hostile attitude of the defendant or person in possession to possess himself of the premises peaceably, and because the action of ejectment is tedious and expensive, therefore is this summary remedy, under the Act of 1836, given.   But the sheriff's vendee is not thereby deprived of any of his previous or concurrent remedies ; he *may* serve notice and proceed under the act, but this is optional with himself. If he does not choose to avail himself of this statutory process he may resort to his common-law remedies.   This very point was ruled in Kellam *v.* Janson, 5 Harris 467, where it was held that the vendee of land had no title at all as against a purchaser at sheriff's sale under a prior judgment against the vendor, because such title was wholly divested by the judicial sale.   In the case cited, the court below assumed just what is here contended for on the part of the plaintiff, that is to say, that the sheriff's vendee had no right to disturb the possession of the person claiming under the defendant in the execution, except by the process prescribed by the Act of 1836.   That case, like the one in hand, was trespass, brought by the vendee of the debtor against the purchaser at the sheriff's sale; and the complaint was that this purchaser had

[Leidy v. Proctor.]

entered during the temporary absence of the plaintiff, broke open his house and turned his goods out of doors. This was undoubtedly a strong case, nevertheless it was held, reversing the court below, that "an action is well founded only when a right is invaded, but that the plaintiff's right ceased by the entry of the defendant—an act that completely obliterated the shadow of right cast by the plaintiff's possession. A complaint against the assumption of possession is a complaint against the assertion of a right, and a demand that the law shall give the plaintiff damages for the loss of that which it was wrong for him to have." It was further said, that the case was covered by the principle governing Overdeer v. Lewis, 1 W. & S. 90, and of all those cases where redress is allowed by the act of the party, that the statutory remedies do not affect such right, since they are necessary only because such possession cannot always be assumed by the mere act of the party. It is true that the case cited was one where the plaintiff had entered after the date of the sheriff's sale, and in this it is dissimilar to the case in hand, where the plaintiff merely continued a possession which had previously belonged to him. The principle, however, pervading the two cases is identical. In either case the plaintiff's right of action ceased with his right of possession, and that right had its end when the lawful owner made his entry. Moreover, if Overdeer v. Lewis is in point, as it is said to be, any shadow of doubt that might remain is swept away. In this case it was held, that a landlord might enter and remove from his premises a tenant holding over after the expiration of the lease, though he had not given notice as required by the Act of 1772.

These cases then settle this part of the present controversy and support the ruling of the learned judge of the court below. It is, however, the fifth assignment which the counsel for the plaintiff considers the most important, and he regards that part of the judge's charge covered by it as containing a startling legal-heresy. "I charge you distinctly," says the court, "that all the timber that lay upon the ground before the sheriff's sale, and which had fallen, did not pass to the purchaser, Mr. Proctor, but was the personal property of Mr. Leidy. I do not think that this is material in this case, for the reason that there is no evidence here, not a scintilla, that Mr. Proctor ever carried away a single stick of this fallen wood. If others came in and took it, they are liable for their trespasses. It is not his. Even if they did it under a sale from him, it would make no difference whatever in this case, for the conditions were that none of it was to be taken until the first of April next succeeding, and besides Mr. Leidy declares that in pursuance of instructions from Mr. Corson he obtained a portion of that wood which was still lying there, even as against Mr. Proctor's tenants." But in this there is no error of which the plaintiff had any right to complain. The court assumed that

[Leidy *v.* Proctor.]

Leidy had a right to the fallen timber, though he had done no act prior to the date of the sheriff's sale which indicated an intention to convert it into personal property. On this assumption it may be admitted that had the defendant by sale or otherwise authorized any person or persons to enter and take this fallen timber before the bringing of this suit, he would have been liable as a trespasser, but he did nothing of the kind. He authorized no one to go upon the premises before the 1st of April 1879, which was long after the bringing of this suit, so that if any timber was taken from that land, it was not only without his authority, but in express violation of the conditions of sale. We are, therefore, unable to see how in all this there was error of which the plaintiff could reasonably complain. Had the court gone farther than it did, and told the jury that the fallen timber which the plaintiff had not converted into saw logs, rails or firewood, before the date of the delivery of the sheriff's deed, passed with the freehold to the defendant, no more would have been said than the law warranted. In Rogers *v.* Gilinger, 6 Casey 185, where the action was trover for the fragments of a building which had been blown down by a tempest before the date of the sheriff's sale under which the defendants claimed, it was held that the plaintiffs could not recover; that these fragments belonged to the sheriff's vendees.

In this case Justice STRONG, who delivered the opinion of the court, made use of the following language: "What then is the criterion by which we are to determine whether that which was once part of the realty has become personalty on being detached? Not capability of restoration to the former connection with the freehold, as is contended, for the tree prostrated by the tempest is incapable of re-annexation to the soil, and yet it remains realty. The true rule would rather seem to be that that which was real shall continue real until the owner of the freehold shall, by his election, give it a different character."

As this opinion was very carefully considered, and as the authorities therein cited most fully sustain it, we must regard it as a definitive settlement of the question, adding only that were the question a new one, our own judgment would lead us to the same conclusion.

The judgment is affirmed.