## GUERNSEY *et al.* v. PHINIZY.

1. Personalty, such as bricks and lumber, when used in building a house upon land becomes realty and constitutes a part of the land. If the house is destroyed by an accidental fire and the bricks and other debris fall upon the land, they still remain a part of the realty if the owner does nothing to show an intention to sever them and convert them again into personalty. In such a case the owner can not remove them from the land after a sale of the land to another, nor hold the vendee accountable for them.

2. Money judgments bear interest from their dates. Where two parties disagree as to the amount to be paid under a contract of sale, as recited above, and the vendee files an equitable petition against the vendor, on the trial of which it is adjudicated that the vendee pay to the vendor a certain sum, greater than that tendered in court but less than that claimed and demanded by the vendor, it is the right of either party to have the decree entered up. If the vendor neglects to have the decree entered for the amount found in his favor, and the plaintiff also neglects to have this done until more than a month after the verdict, the amount found by the jury bears interest only from the date of the decree, and not from the time of the rendition of the verdict.

3. In equitable proceedings it is the duty of the judge to determine who shall pay the costs. This discretion, vested in the judge by the Civil Code, § 4850, can not be interfered with by this court unless it is manifestly abused. It does not appear to have been abused in the present case.

Argued June 7, — Decided July 19, 1901.

Equitable petition. Before Judge Brinson. Richmond superior court. January 7, 1901.

*Joseph B. & Bryan Cumming*, for plaintiffs in error.
*Joseph R. Lamar*, contra.

SIMMONS, C. J. It appears from the record that Mrs. Guernsey and Hervey S. Hoadley owned a lot of land in the city of Augusta. On the lot was a brick building. They offered the property for sale through an agent, and by him it was sold to Phinizy at the

price of $16,000. Prior to this the vendors had given a security deed to Stetson, the latter giving them a bond for titles to reconvey upon the payment of the money loaned. By the contract of sale this security deed was to be paid off and the property reconveyed before Phinizy was to pay for it in full. Considerable delay occurred by reason of the loss of the bond for titles made by Stetson, the latter refusing to reconvey until the bond was produced or a bond of indemnity given him. Pending the negotiations the house was accidentally destroyed by fire. After the fire it appears that the vendors undertook to rescind the contract of sale. Phinizy refused to rescind, and tendered for the lot a certain amount of money, less than the original contract price. This was refused, the vendors demanding the full contract price. Thereupon the vendee filed an equitable petition, setting out these facts, and praying a specific performance of the contract, and that a deduction be made because of the destruction by fire of the improvements upon the lot. Upon the trial the jury found that, at the time the contract was entered into, the land itself, without the improvements, was worth $8,000, and that since the fire the vendee had tendered that amount for the land. The court decreed that the plaintiff should pay to the vendors the sum of $8,000, and that they should make him a deed to the land and remove therefrom certain incumbrances, including that of Stetson. This verdict and decree were not excepted to by either party, but, between the rendition of the verdict and the making of the decree, a dispute arose as to the ownership of the brick left upon the lot after the fire. It appears that some of these brick constituted a part of the remaining foundations of the building, while the remainder were part of the debris which had fallen and which remained on the land after the fire. The defendants amended their answer, after verdict, by setting out these facts and praying that the brick be decreed to belong to them. Phinizy resisted this by a demurrer and by an answer. The court decided that the brick belonged to Phinizy. The court also decreed that the $8,000 bear interest from the date of the decree and not from the time of the rendition of the verdict, some time having elapsed between the verdict and the decree. It was also decreed that the defendants should pay all costs. The defendants excepted to the decree as to the ownership of the brick, as to the interest, and as to the costs, and by writ of error brought these questions to this court for review.

1.. Whatever may be the law of fixtures with regard to articles not firmly annexed to the soil, it is clear that when the owner of land uses brick, lumber, and other personalty for the construction of a substantial and permanent building upon his land, they become a part of the realty.   Brick, though personal property before they are put in the house, become afterwards attached to and a part of the land and so remain until severed and reconverted into personalty *by the owner*.  If a house of brick be destroyed by accident and the walls fall, the brick may be converted into personalty by any act of the owner which evidences his intention to so sever them. As long, however, as the owner leaves them as they have fallen, some of them in the foundation walls and some scattered over the land, they remain real property and a part of the land.  In the case of Rogers *v.* Gilinger, 30 Pa. St. 185, 72 Am. Dec. 694, it appeared that a house was blown down by a storm, the lumber of which it had been composed falling upon the land.   Subsequently the land was sold, and a contest arose over the ownership of this lumber.. It was held that the lumber remained realty and a part of the land, and passed, with the land, to the vendee.  In the opinion Mr. Justice Strong said:   "What, then, is the criterion by which we are to determine whether that which was once part of the realty has become personalty on being detached?   Not capability of restoration to the former connection with the freehold, as is contended, for the tree prostrated by the tempest is incapable of re-annexation to the soil, and yet it remains realty.   The true rule would rather seem to be that that which was real shall continue real until the owner of the freehold shall, by his election, give it a different character." This decision was cited, approved, and followed in Leidy *v.* Proctor, 97 Pa. St. 486, the court holding that timber which had fallen, but which had not been converted into rails etc. by the owner, passed to the purchaser as a part of the realty.   The case of Rogers *v.* Gilinger is also cited with approval in 1 Washb. Real Prop. (5th ed.) 16; 4 Shars. & Budd, Lead. Cas. Real Prop. 518; 1 Kerr, Real Prop. 96.   In the present case the record does not disclose that the vendors of the premises severed the bricks from the land or did any act evincing an intention to reconvert them into personalty.   We think that the bricks remain, therefore, a part of the realty, and that the judge did not err in holding that they belonged to the purchaser.

2. It appears from the record that some time elapsed after the verdict of the jury before the decree was entered by the court. The plaintiffs in error contended that they ought to have interest on the principal amount from the time of the verdict, and not merely from the date of the decree, as it was the duty of the plaintiff's counsel to have the decree entered. Under our code, judgments at law bear interest only from the time they are entered and signed. This being a judgment or decree in equity for a specific sum of money, we see no reason why the same rule should not be applied. The plaintiffs in error, if they intended to abide by the verdict, had the right to move the court to enter the decree as soon as the verdict was received. They were entitled to the money found by the verdict, and if they wished it to bear interest they should have moved that the decree be entered. Inasmuch as they did not do so, and the plaintiff waited some time after the verdict before having the decree entered, it should bear interest from its date only.

3. The trial judge decreed that the defendants in the court below pay the costs of the suit. In cases in equity it is the duty of the judge to determine which party shall pay the costs, or whether he shall divide them between the parties. Civil Code, § 4850. It is a matter within his discretion. The jury having found that the plaintiff had tendered the true value of the land to the vendees and that the latter had refused it and insisted on a greater price, there was certainly no abuse of discretion in the adjudication as to costs.

*Judgment affirmed. All the Justices concurring.*