**GLENN v. SHAMBURGER et al.  (No. 1939.)**

(Court of Civil Appeals of Texas. Amarillo.
April 5, 1922. Rehearing Denied
May 5, 1922.)

1. **Homestead ⬪96—Vendor's lien not preju-
diced by subsequent establishment of home-
stead by vendee.**

A vendor's lien is not prejudiced by the sub-
sequent establishment of a homestead thereon
by the vendee, and where land was purchased,
and a vendor's lien retained, no homestead
right can be asserted by either the vendee or
one claiming through him against the vendor's
suit for unpaid purchase money.

2. **Fixtures ⬪21—Permanent home erected
on land becomes part of realty.**

Where the vendee, under an executory land
contract in which the vendor retained his lien,
erected a house as a home and occupied it for
over a year, it became a part of the realty.

3. **Fixtures ⬪21—Right of vendee in posses-
sion under executory purchase contract to
erect house as property separate from free-
hold stated.**

A vendee in possession under an executory
purchase contract has no right to erect a build-
ing on the premises as property separate from
the freehold, and the intention to do so, no mat-
ter how clearly manifested, is of no avail,
without an agreement with the vendor that it
shall not become a part of the realty.

4. **Fixtures ⬪29—Severance by act of God
did not change character of house as fixture.**

Where a house erected by a vendee under
an executory contract became a fixture and
part of the realty, and no agreement was shown
whereby it should remain personalty, a sever-
ance of the house from the realty by a storm in
no way changed its character as a fixture, and
a mortgage to a materialman after the sever-
ance did not defeat the vendor's right to in-
clude the house in his lien.

5. **Exemptions ⬪57—Proceeds from exempted
property destroyed also exempt.**

The involuntary destruction of exempt
property by fire does not deprive the owner of
his right to collect the insurance as also ex-
empt.

6. **Fixtures ⬪29 — Retain status, notwith-
standing detachment by flood, fire, or storm.**

When personal property has once become
attached to real estate in such manner as that
it cannot be classed as a removable fixture,
it retains its status as realty, notwithstanding
its detachment or partial destruction by flood,
fire, or storm.

Appeal from District Court, Collingsworth
County; J. A. Nabers, Judge.

Suit by Bob Glenn against J. H. Steelman
on notes retaining a vendor's lien, in which
C. D. Shamburger was made a party defend-
ant and filed a cross-action against Steelman.
From a judgment of foreclosure of a ven-
dor's lien, but denying a foreclosure as to the
house, and a judgment of foreclosure for C.
D. Shamburger of a chattel mortgage lien
upon the house, plaintiff appeals. Reversed
and remanded.

Cocke & Gribble, of Wellington, for appel-
lant.

R. H. Templeton and R. Q. Murphree,
both of Wellington, and Jos. H. Aynesworth
and Mathis & Caldwell, all of Wichita Falls,
for appellees.

HALL, J. The appellant, Glenn, filed this
suit to recover the amount of six promissory
notes, retaining a vendor's lien upon a half
section of land in Collingsworth county. The
notes were executed by J. H. Steelman on
November 4, 1919, and due January 1, 1921,
1922, 1923, 1924, 1925, and 1926, thereafter,
respectively. The notes aggregated $3,214,
provided for interest from date at 8 per
cent., and contained the usual stipulation for
attorney's fees, together with the accelera-
tion clause. He alleged that the notes were
executed in part payment for the half section
of land, and prayed for judgment for the
amount of the notes and foreclosure of the
lien. C. D. Shamburger was made a party
defendant, alleging that he claimed some in-
terest in the premises. Shamburger, by a
cross-action against Steelman, sought to re-
cover upon a certain promissory note execut-
ed November 23, 1920, by the said Steelman,
in the sum of $1,690.65. He alleged that
this note was due for lumber and material
furnished by him to Steelman for the erec-
tion of a nine-room house upon the land in
controversy, that it was secured by deed of
trust lien upon the land, and that later, on
the 5th day of July, 1921, Steelman and
wife executed a chattel mortgage upon the
said house to secure said note. He prayed
for judgment and for foreclosure of his deed
of trust and chattel mortgage liens. Steel-
man answered, admitting the execution and
delivery of the notes sued on by both parties,
as well as the deed of trust and chattel mort-
gage, and acknowledged the existence of the
vendor's lien, and pleaded that the land and
house constituted his homestead. By sup-
plemental petition Glenn denied the exist-
ence of any lien in favor of Shamburger, al-
leged that the house was a part of the realty,
and together with the lien constituted the
homestead of Steelman.

The case was tried to a jury, whose find-
ings are in effect as follows: That Sham-
burger's agent and Steelman did not, as an
inducement for the latter to execute the chat-
tel mortgage, agree that Shamburger should
look alone to the foreclosure on the house
for payment of the Shamburger note. Sec-
ond, that the house was severed from the
land; that is, it was not attached to it at
the time the chattel mortgage to Shamburger
was executed. That Shamburger did not
agree with Steelman to accept the deed of

trust and look alone to the property for the payment of his debt. Based upon this. verdict, the court rendered judgment in favor of Glenn for the full amount of his notes, principal, interest, and attorney's fees, and a foreclosure of the vendor's lien upon the land, but denying him a foreclosure as to the house. There was further a judgment in favor of Shamburger for the amount of his debt, and a foreclosure in his favor of the chattel mortgage lien upon the house. Under appropriate assignments and propositions the findings and judgment are attacked from many angles, which it will not be necessary for us to consider in detail. It appears from the evidence that, after Steelman purchased the half section of land, he purchased lumber and other building material from Shamburger and constructed the house in question upon it; that he occupied it as a home for more than a year; that the house was completed some time in the early part of the year 1920, and that on November 23, 1920, Steelman, without being joined by his wife, executed a deed of trust to secure his note given to Shamburger for the lumber and building material.

[1] It is not claimed that there was ever any agreement between Shamburger and Steelman that a materialman's lien should be fixed upon the premises and improvements under the statutes providing for such liens. This deed of trust was duly recorded. Later, on or about the 4th day of April, 1921, a storm blew the house from the foundation, and left it about 100 feet from where it originally stood, but still upon the premises in question. On July 5, 1921, Steelman and wife executed a chattel mortgage in regular form upon the house as additional security for their note due Shamburger, and this was filed on August 5, 1921. · It is settled law that the vendor's lien is not prejudiced by the subsequent establishment of a homestead thereon by the vendee, and no homestead right can be asserted either by Steelman or any one claiming through or under him against Glenn's suit for unpaid purchase money. Quinn v. Dickinson (Tex. Civ. App.) 146 S. W. 993; Evans v. Marlow (Tex. Civ. App.) 149 S. W. 347; Jackson v. Bradshaw, 24 Tex. Civ. App. 30, 57 S. W. 878; Id., 28 Tex. Civ. App. 394, 67 S. W. 438.

[2, 3] When Steelman erected the house, it was with the evident purpose and intent of making it his home. The evidence shows that he occupied it as such for over a year, impressing it with the homestead character before the chattel mortgage was executed. It was a nine-room house, and was intended to be a permanent improvement. Under the uncontroverted facts it must be treated as a part of the realty. Watson v. Markham, 33 Tex. Civ. App. 476, 77 S. W. 660; Van Valkenburgh v. Ford (Tex. Civ. App.). 207 S. W. 405; Id. (Tex. Com. App.) 228 S. W. 194; Boyd v. Hurd (Tex. Civ. App.) 207 S. W. 339;

Murray Co. v. Jacksboro O. & M. Co. (Tex. Civ. App.) 205 S. W. 517. The general rule in such cases is thus stated in 11 R. C. L. 1084, par. 27:

"A vendee, in possession of land under an executory contract of purchase, has no right to erect a building on the premises as property, separate and distinct from the freehold, and an intention to do so, no matter how clearly manifested, is of no avail without an agreement, express or implied, with the landowner that it shall not become part of the realty. This must be so where the vendee fails to fulfill the contract and acquire title."

[4] According to the test provided in O'Neil v. Quilter (Tex. Sup.) 234 S. W. 528, and in Jones v. Bull, 85 Tex. 136, 19 S. W. 1031, adopted from Hutchins v. Masterson, 46 Tex. 554, 26 Am. Rep. 286, the house became a fixture and a part of the realty. No agreement was shown between any of the parties whereby the lumber and other material furnished by Shamburger, or the house itself, should remain personalty and not become a part of the land. The chattel mortgage, as stated, was executed, attempting to convey the house, more than three months after a storm had blown it from its foundation; but the evidence further shows that it had been raised, placed upon the new foundation, and repaired, and was occupied by Steelman and his family up to the time of the trial. This was a severance by the act of God, and in no way changed the character of the house as a fixture. Rogers v. Gilinger, 30 Pa. 185, 72 Am. Dec. 694; Patton v. Moore, 16 W. Va. 428, 37 Am. Rep. 789.

[5, 6] It is the rule in this state that the involuntary destruction of exempt property by fire does not deprive the owner of his right to collect the insurance as also exempt. Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742. According to the weight of authority, when personal property has once become attached to real estate, in such manner as that it cannot be classed as removable fixtures, it retains its status as realty, notwithstanding its detachment or partial destruction by flood, fire, or storm. Guernsey v. Phinizy, 113 Ga. 898, 39 S. E. 402, 84 Am. St. Rep. 270; Goddard v. Bolster, 6 Greenl. (6 Me.) 427, 20 Am. Dec. 320; Leidy v. Proctor, 97 Pa. 486.

It is insisted that under the case of Land Mortgage Bank v. Quanah Hotel Co., 89 Tex. 332, 34 S. W. 730, the chattel mortgage and deed of trust given to Shamburger should be held as superior liens upon the building. In our opinion that case had no application, since it appears that the materialmen had acquired a statutory lien by strict compliance with all the requirements of the statute, and they were allowed to participate with the holder of the lien upon the land only in virtue of the peculiar wording of the statute, which gave them a preference lien upon the improvements. As stated, Shamburger

never attempted to acquire a materialman's lien in this case. In the case of Doak v. Moore, 48 Tex. Civ. App. 594, 109 S. W. 405, it is held that a mortgage given upon fixtures, a part of the realty constituting a homestead, is void, and the holding in Inge & Boring v. Cain, 65 Tex. 75, is that in virtue of the definite language of the Constitution it can never become valid.

We find it unnecessary to enter into a discussion of this particular phase of the law, since it would have no bearing whatever upon the rights of Glenn, who alone has appealed. Steelman testified in effect that he was a man of family; that he built the house for a home, and lived in it ever since it was completed, and used and cultivated the land upon which it stood. There is in appellee's brief an illuminating discussion of the question of the abandonment of a homestead and the rights of creditors under such condition, but in the view we take of the case this discussion becomes purely academic. It may be admitted that as between Steelman and Shamburger there was an abandonment of the nine-room house as a home, and it may be further admitted that as between them the deed of trust and chattel mortgage became operative as liens upon the house; still this would not impair the validity of appellant's prior vendor's lien, in the absence of some agreement or act upon his part which could be construed as a waiver or an estoppel. When the house was attached to the realty, it became eo instante subject to the vendor's lien existing against the land. The storm, by changing the position of the house, could not affect the rule of law, and no agreement made between Steelman and Shamburger, without the assent of Glenn, could impair the latter's security.

For the reasons stated the ·judgment is reversed, and the cause remanded.