LAND MORTGAGE BANK OF TEXAS V. QUANAH HOTEL COMPANY ET AL.

No. 387.—Decided March 16, 1896.

1. **Immaterial Error.**

Failure of the Court of Civil Appeals to make additional findings of fact when requested by motion will not be considered by the Supreme Court on writ of error. (P. 336.)

2. **Vendor's Lien—Mechanic's Lien.**

Under art. 3301, Rev. Stats., the mechanic's lien is subordinate to a vendor's lien

existing before its inception: but such vendor's lien has precedence as to the land only—not the improvements by which the mechanic's lien arose. (P. 337.)

**3.   Same—Same—Marshalling Securities.**

Where there are conflicting liens: e. g. vendor's lien having precedence upon the land and mechanic's lien having precedence upon the buildings, the equities may be reached by ascertaining the value of the land without the buildings and of the buildings alone. This will establish the proportion of proceeds of a sale made to foreclose such liens to which each is entitled. (P. 339.)

ERROR to Court of Civil Appeals for Second District in an appeal from Tarrant County.

*J. B. Davis,* for plaintiff in error.

*W. T. League,* for Wm. Cameron & Co.

*R. L. Carlock* and *T. J. Powell,* for M. E. Kerrigan, E. H. Rempe, and the Fort Worth Iron Works, defendants in error.

BROWN, ASSOCIATE JUSTICE.—On the 25th day of August, 1890, the Quanah Hotel Co. entered into a written contract with E. H. Rempe & Company, composed of E. H. Rempe alone, for the construction of a hotel building upon lots numbers ten, eleven and twelve, block two, in the city of Quanah, for the consideration of $21,092 and such "additional sum as might be a fair compensation for extras on the building." The work was completed on February 20, 1891, and the contract between the Hotel Company and Rempe & Company was filed and recorded according to law on June 10, 1891, for the purpose of securing a lien upon the property for the unpaid balance of the price of construction.

Rempe & Company was indebted to William Cammeron & Company, W. G. Lewis & Company, J. S. Mayfield, Ramsey & Marrs, Fort Worth Iron Works and M. E. Kerrigan, as subcontractors and material men who furnished material and under subcontracts performed the work of construction. These parties filed their claims for record under the statute for the purpose of fixing liens upon the property and each of them sued Rempe and the Hotel Company for the collection of the debt and enforcement of the lien upon the property. Rempe & Company also brought suit against the Hotel Company for the balance due and unpaid upon the contract and to foreclose the lien upon the lots and house. Betterton, Son & Company filed a garnishment proceeding against the Hotel Company for the collection of a debt against Rempe & Co. All of these suits were consolidated under the style of Betterton, Son & Co. against the Quanah Hotel Co. Judgment was entered in this consolidated suit on the 29th day of May, 1893, against Betterton, Son & Co. and in favor of E. H. Rempe & Company against the Quanah Hotel Co. for 7,305.91, foreclosing the mechanics' lien under said contract upon the lots 10, 11 and 12, and the building thereon. Cammeron & Co., Lewis & Co., J. S. Mayfield, Ramsey & Marrs, the Fort Worth Iron Works and M. E. Kerrigan, each recovered judgment against Rempe

& Co. for the amount of their claims, and judgment was entered foreclosing the lien in favor of each upon the property above described. The judgment provided that the foreclosure in favor of the said creditors of Rempe & Co. should only extend to the amount due from the Hotel Company to Rempe & Co.,—that is, for $7305.91,—which was apportioned among the several creditors in the judgment, and it was provided that the discharge of the amount adjudged to Rempe & Co. should be a satisfaction of all the claims of his creditors therein foreclosed as against the said property and that a discharge of the claims of the creditors should likewise be a discharge of the claim of Rempe & Co. In other words, the amount due from the Hotel Co. to Rempe & Co. was distributed among his creditors in the proportion stated in the judgment. The property was ordered to be sold in accordance with the judgment and an order of sale was issued in conformity therewith, under which the said property, lots 10, 11 and 12, in block No. 2, and the buildings and improvements thereon, were sold, at which sale William Cammeron & Co., W. G. Lewis & Co., J. S. Mayfield, The Fort Worth Iron Works, Ramsey & Marrs and M. E. Kerrigan became the purchasers for the sum of $7530, and a deed was made by the sheriff to them, they holding according to their several interests in the said judgment.

After the sale and purchase by the parties named, C. H. Silliman purchased the interest of J. S. Mayfield, W. G. Lewis & Co. and Ramsey & Marrs in the property and all right to their claims and judgments.

When the Quanah Hotel Co. bought lots 10 and 11, there was upon them a vendor's lien for the sum of $2000, with ten per cent interest and ten per cent attorney's fees in case of suit upon the debt, which was evidenced by a note for that sum, and the lien reserved in the face of the deed. The Quanah Hotel Co. in purchasing the said lots assumed the payment of the vendor's lien note.

On the 15th day of January, 1891, the Land Mortgage Bank of Texas, Limited, loaned to the Quanah Hotel Co. $8000 and took its note for that sum with ten per cent interest in semi-annual payments of $400 each, the principal sum to be paid on the first day of January, 1896; upon failure to pay any installment of interest for ten days after the same became due, the whole debt was to become due, and in case of suit, ten per cent attorney's fees to be added. To secure the note a deed of trust was executed to C. H. Silliman, trustee, upon lots 10, 11 and 12. At the time the Hotel Company borrowed the money from the plaintiff in error and executed the deed of trust, it was understood and agreed that the vendor's lien upon said lots should be discharged, and subsequently, by an understanding and agreement between the plaintiff in error and the Hotel Company, a part of the money loaned was applied to the payment of the vendor's lien note, with the agreement that the plaintiff in error should be subrogated to the rights of the holders of the said note. The plaintiff in error at the time that it loaned the money and took the deed of trust from the Hotel Company knew that the hotel building was being constructed and that Rempe & Co. had the contract to build it.

The Hotel Co. having failed to pay one or more installments of interest upon the note to plaintiff, the whole note was thereby matured.

After the sale of the property under the judgment rendered in the case of Betterton, Son & Co. against Quanah Hotel Co. the Land Mortgage Bank of Texas, Limited, instituted this suit against the Quanah Hotel Co. to collect its debt and enforce the deed of trust upon the said property. It was alleged by the plaintiff that it had paid off and discharged the vendor's lien upon lots 10 and 11 and was subrogated to the rights and prior equities of the vendor therein. The plaintiff made E. H. Rempe & Co., Wm. Cammeron & Co., W. G. Lewis & Co., J. S. Mayfield, Ramsey & Marrs, Fort Worth Iron Works, M. E. Kerrigan and C. H. Silliman defendants. Silliman was originally made a defendant, as alleged, simply because he was trustee in the deed of trust, but he subsequently filed a plea of intervention, claiming that he was the owner of the interest in the said property and the judgments which had previously belonged to J. S. Mayfield, W. G. Lewis & Co. and Ramsey & Marrs, whereupon the plaintiff dismissed as to the said Mayfield, Lewis & Co. and Ramsey & Marrs. The case was tried before the court, and judgment rendered in favor of the plaintiff Land Mortgage Bank against the Quanah Hotel Co. and Rempe & Co. for the amount of the note, interest and attorney's fees, foreclosing the deed of trust upon all of the property, with the qualification as follows: That the sum of $2201.65 paid by the plaintiff in discharge of the vendor's lien, with interest from February 14, 1891, should hold a prior lien upon lots 10 and 11, and that the sum of $7305.91 adjudged in favor of E. H. Rempe & Co. in the judgment rendered in the case of Betterton Son & Co. against Quanah Hotel Co. should hold a prior lien upon lot 12 and the buildings and improvements upon all the lots, the said sum to be distributed among the purchasers of the said lots and property, Wm. Cammeron & Co., the Fort Worth Iron Works, M. E. Kerrigan and C. H. Silliman—purchaser from Mayfield, Lewis and Ramsey & Marrs—according to their several interests therein.

It was found by the court that the house and improvements could not be removed from the said lots without destroying their value, and it was ordered that the entire property be sold together. It was also ascertained and adjudged by the court that lots 10 and 11 constitute one-ninth part of the value of the whole property. The judgment provided that in case the Land Mortgage Bank of Texas should pay off and discharge the claims of the said parties, then the entire proceeds of the sale of the property should be paid to it, and in case the said Cammeron & Co., Fort Worth Iron Works, M. E. Kerrigan and C. H. Silliman should pay off and discharge the debt of the plaintiff, then they should have a relinquishment of the lien of the said plaintiff. It was ordered by the court that, in case sale was made, the proceeds should be applied (1) to the payment of the costs of that suit and the cost of executing the order of sale; (2) one-ninth part, or so much thereof as might be necessary, should be applied to the payment of the $2201.65 and interest thereon paid in discharge of the vendor's lien aforesaid, as adjudged to

the plaintiff therein, and if there should be more than sufficient to satisfy the vendor's lien the excess to be applied to the mechanics' liens; (3) that the claims of Cammeron & Co., Fort Worth Iron Works, M. E. Kerrigan and C. H. Silliman should then be discharged out of the remaining eight-ninths of the proceeds of said sale, and if any should remain thereafter, then the balance should be applied to the payment of the plaintiff's debt; (4) if, after discharging all of these debts and costs, there should remain any of the proceeds of said sale, the same to be paid to the said Cammeron & Co., Fort Worth Iron Works, Kerrigan and Silliman.

From this judgment the Land Mortgage Bank of Texas appealed to the Court of Civil Appeals, which judgment was there affirmed except in regard to the sum paid in discharge of the vendor's lien, and as to that it was so reformed as to allow the plaintiff ten per cent attorney's fees thereon.

The plaintiff in error assigns in this court five grounds upon which it seeks a reversal of this judgment, as follows: The first three complain of the action of the court in holding that Cameron & Co., the Fort Worth Iron Works and Kerrigan had fixed liens upon the property under the laws of this State. The fourth assignment questions the correctness of the judgment as to the priority of the liens adjudged therein; and the fifth assigns as error the refusal of the court to make additional findings of fact as requested by its motion. This last assignment we have frequently held cannot be considered in this court upon error.

Much of this voluminous record is made up of evidence upon the subject of the liens of the material-men and contractors who performed the work and furnished material under the contract with Rempe & Co. It is not denied that E. H. Rempe & Co. had a valid and subsisting lien upon all of the property under the Constitution and laws of this State, which was foreclosed by the judgment of the court and the property sold thereunder. It therefore is not important, in determining the rights of the parties, whether or not his creditors had valid liens upon the property or not, because the judgment forecloses the lien of the main contract and distributes the funds due from the Hotel Company to Rempe & Co. among the creditors of the latter, of which plaintiff has no cause to complain. It in no way affects its rights. The title of the Quanah Hotel Co. passed to the purchasers under the valid lien in favor of E. H. Rempe & Co., subject to whatever rights plaintiff had against the said property. We therefore shall not discuss the questions raised by the first, second and third assignments in the petition for writ of error.

The writ of error was granted in this case because this court was of opinion that error had been committed by the district court in apportioning the proceeds of the property so far as it affected the plaintiff's rights under the vendor's lien upon lots 10 and 11, but upon a careful examination of the matter we are satisfied that the judge who tried the case below applied the correct rule in the solution of a difficult question.

The rights of the parties under the circumstances of this case are gov-

erned by the eighth section of the Act of April 5, 1889 (Laws of the 21st Legislature, page 110, Sayles' Supplement to Revised Statutes, art. 3171), which is in this language: "The lien herein provided for shall attach to the houses, buildings or improvements for which they were furnished or the work was done, in preference to any prior lien or incumbrance or mortgage upon the land on which houses, buildings or improvements have been put or labor performed, and the person enforcing the same may have such house, building or improvement sold separately: Provided, any lien, incumbrance or mortgage on the land, or improvement at the time of the inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for."

The plaintiff in error claims that it is entitled to have its vendor's lien satisfied out of the money derived from the sale of the entire property in preference to the mechanics' lien under which the defendants claim. The plain letter of the statute quoted above settles that question against such claim. The priority of the mechanic's lien upon the building, over the existing incumbrance of the vendor's lien upon the lots, is clearly stated in the law. The plaintiff in this case, as to that portion of its claim which represented the sum paid in discharge of the vendor's lien upon lots 10 and 11, to which lien it was subrogated, had a prior right over the claim of the mechanics' lien to all that the said lots would sell for under the foreclosure proceedings and a subordinate right to that of the defendants in the proceeds of the sale of lot 12 and the buildings. The defendants, claiming under the mechanic's lien, had a like prior right over the vendor's lien in the proceeds of the sale of lot 12 and the buildings, and a secondary right to that of the plaintiff in error in the proceeds of the sale of lots 10 and 11, and as to the lots 10 and 11, its right was prior to that of the mortgage of the plaintiffs, for all of the debt secured thereby except that which represented the vendor's lien.

If lots 10 and 11 could be sold separately from the other property, there would of course be no difficulty in adjusting these conflicting equities, but as this cannot be done, and all must be sold together, the apportionment of the proceeds so as to protect the rights of all parties becomes practically a matter of much difficulty. Selling the property in gross it would be impossible to ascertain the exact portion of the sum for which it would be sold that would represent the amount bid or paid for either part of the property, and courts must adopt that rule which will most nearly attain that end.

A diligent search of the authorities has enabled us to find decisions in the courts of but two States which bear directly upon the question under consideration.

In Whitehead v. The First Methodist Protestant Church, 15 N. J. Eq., 135, a mortgage was placed upon the lots, duly recorded, and its validity and lien unquestioned. Subsequently a church edifice was erected upon the lots and a mechanic's lien was fixed upon the property in accordance with law, which was likewise unquestionably valid. In that case it was

claimed that the court should ascertain the fair market value of the lot without the improvements, and out of the proceeds of the whole pay that sum in discharge of the prior mortgage. The court said: "The true measure of equity unquestionably would be to give to the mortgagee the value of the lot clear of incumbrance of the building and to the lien-holder the enhanced value which his labor and materials had given to the lot. The mortgagee cannot in equity claim that he shall be benefited by the work and labor of the mechanic or material man, but he has a strong claim in justice and equity to insist that he shall not be injured by the operation of their claims. On the other hand, the material man has a right to insist that the loss incurred by the mortgagee, by a forced sale or by a depreciation in value of property at the time of the sale shall not be thrown upon him. Each claimant should bear his proportionate share of loss resulting from a sale below the real value of the property. That is a loss to which every mortgagee is exposed and which is in nowise affected by the building. It is a loss in which both parties necessarily share in proportion to the amount of their respective claims. These positions seem to be self-evident truths." After discussing the method by which these values should be arrived at, which is not material to the matter under consideration, the court proceeds: "If the diminution in the value of the security results from depreciation of value or a forced sale, it may justly fall on the mortgagee, but if from an injudicious investment in the building, the mortgagee should not be prejudiced by it. In the latter event the true course would be to deduct the full amount of the mortgage debt from the price and pay the balance to the lien-holders. The only safe mode of determining the relative claims of the respective parties will be for the master to ascertain the market value of the lot and building, and also the value of the lot clear of the building and improvements upon it as it stood at the time of the mortgage. This will establish the proportions of the claims of the respective parties upon the proceeds of this sale."

In the State of Illinois the statute provided practically the same as to the priority of the lien of the mechanic and material men upon the building as the law in this State, and further provided that upon questions arising between previous incumbrances and creditors, "The previous incumbrance shall be preferred to the extent of the value of the land at the time of making the contract, and the court shall ascertain by a jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest." In the case of Bradley v. Simpson, 93 Ill., p. 93, this character of conflict arose and the question was presented that is now before this court. The court said: "The claim of appellant is that, to the extent of $3200—that being the stipulated value of the premises prior to the accruing of the mechanic's lien—her two prior mortgages should have been preferred as against the mechanic's lien, and that she is entitled to receive out of the proceeds of the sale the said sum of $3200.

"This would be making the incumbrance operate upon the building

and allow to it substantially the entire benefit of the building, as the whole net proceeds of both the lots and buildings together are only $3338.91. This would be in direct contravention of the provisions of the statute, 'that no incumbrance shall operate upon the building erected or materials furnished until the lien in favor of the person doing the work or furnishing the material shall have been satisfied.'

"As between the mortgages and the mechanic's lien under the statute, the mortgages were entitled to satisfaction out of the land and the other liens out of the building. As the building could not properly be separated from the lots in order to realize the benefit of the liens, the whole property, land and building together, had to be sold that it might be ·converted into money and the proceeds divided. Proceeds of the sale represent and stand in place of the land and the building and the parties have the same proportionate interest in the proceeds that they had in the property before it was sold. The result of the sale shows either a great depreciation of the property from its former value or a great sacrifice of it in the making of the sale." The court in that case applied the rule laid down in Whitehead v. Church as a correct interpretation of the statute. (See also North Presbyterian Church v. Jevne, 32 Ill., 220.) ·

Hardships may and doubtless will arise under any rule that may be adopted, and all that can be done in such cases is to arrive at the best practical solution of the matter, so as to preserve and protect the rights of all parties in accordance with the principles of equity and right. If the market value of the lot should be ascertained before the sale, and after sale that sum should be deducted from the proceeds, it might, and, experience teaches us, would generally result in taking from the proceeds of such sale a larger amount than actually represented the lot, for it is well known that property sold at public outcry under such circumstances rarely brings the amount which would be placed upon it as its market value, and thus, in violation of the statute, a part of the proceeds of the house would be applied to the discharge of the prior incumbrance. If the rule laid down be fairly and properly enforced, that is, if the fair market value of the lot at the time, without the improvement, be ascertained, and also the market value of the house at the same time, considering the purposes for which it is to be used and all the surrounding circumstances, be likewise ascertained, upon a sale of the property as a whole, the proceeds in gross will represent the value of both, and the proportion that the value of each bears to the value of the whole will be a just basis for division of the money derived from the sale of such property.

It is true that circumstances might exist under which the lot would sell for a greater price without that particular house upon it and thus the security of the prior incumbrance be to some extent reduced. But these are matters of speculation into which the court cannot enter in adjusting the business complications which arise in the course of such transactions. We believe that the rule stated is the safest that can be adopted for determining the rights of parties under these circumstances.

Every man who sells lands or takes a mortgage upon them in this State does so with the knowledge that they may and probably will be improved by the erection of some kind of structures thereon and that the law as it exists gives to those who contribute by their labor or material to the improvement of such property a prior lien upon the buildings thus erected.

We find no error in the judgment of the Court of Civil Appeals, and said judgment is therefore affirmed.

*Affirmed.*