BROWN v. WEBB et al.    (No. 2101.)

Court of Civil Appeals of Texas. El Paso. Jan. 5, 1928.

Mechanics' liens ☞295—Where houses cannot be removed without loss, properties should be sold and proceeds prorated between vendors' lienors and subsequent mechanics' lienors (Rev. St. 1925, art. 5459; Const. art. 16, §§ 37, 50, 51).

Under Rev. St. 1925, art. 5459, making mechanics' liens on a house superior to liens on land and providing that house may be separately sold and removed, where there was a vendor's lien on separate parcels of agricultural land and mechanic's lien on homesteads therein were subsequently acquired, within purview of Const. art. 16, §§ 37, 50, 51, and houses could not be removed from land without great loss to lienholder, whole of properties should be sold together in bulk and the proceeds prorated between holders of vendors' liens and holder of mechanics' liens.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by J. E. Webb against John C. M. Snyman and others, in which defendants Edgar D. Brown and E. L. Wetzig filed cross-actions. From the judgment rendered, defendant Brown appeals. Reversed and rendered.

R. A. D. Morton and Lea, McGrady, Thomason & Edwards, all of El Paso, for appellant.

Paul Thomas and McBroom & Scott, all of El Paso, for appellees.

WALTHALL, J. No objection having been made to the statement of the nature and result of the suit made by counsel in their brief for Edgar D. Brown, one of the defendants in the trial court and appellant here, we have concluded to adopt the statement. It follows:

This suit was filed by J. E. Webb, an appellee, against John C. Snyman, H. Engelking,

J. C. Viljoen, C. A. Viljoen, Wynan D. Viljoen, Henry Snyman, and Edgar D. Brown, for the purpose of foreclosing a lien on surveys numbered 130, 136, 137, and 144, in the San Elizario grant, in El Paso county, Tex., which lien, it was alleged, secured the three notes sued on of $5,000, $4,823.85, and $1,000, which, on January 2, 1925, Engelking had given to John C. M. Snyman as well as the fourth note for $1,000, dated December 1, 1923, which said Snyman had given to E. L. Wetzig, it being alleged that Webb had become the holder and owner of each of said notes, and that all of same were past due and unpaid, and provided for 10 per cent. attorney's fees, and that Engelking had, after the giving of the above notes, sold said four surveys to the three Viljoen defendants and to Henry Snyman, and that Edgar D. Brown was claiming some lien on the said property.

Edgar D. Brown filed answer and cross-action, making all of the parties, except himself, in the original petition defendants, and bringing in also the wives of the three Viljoens and Henry Snyman, and also bringing in E. L. Wetzig, and setting up that in December, 1925, he made there separate contracts in writing with J. C. Viljoen and wife, Henry Snyman and wife, and C. A. Viljoen and wife, for the building, respectively, on surveys numbered 130, 136, and 144 of dwelling houses; that as to survey numbered 130 the contract with J. C. Viljoen and wife provided for sums aggregating $1,065.89, together with interest and attorney's fees, to be paid to said Brown for the materials for said house; and that as to survey numbered 136 the contract with Henry Snyman and wife provided for sums aggregating $1,176.54, together with interest and attorney's fees, to be paid to said Brown for the materials for said house; and that as to survey numbered 144 the contract with C. A. Viljoen and wife provided for sums aggregating $1,693.39, together with interest and attorney's fees, to be paid to said Brown for the materials for said house.

That each of said contracts was signed by the respective parties and joined in by the wife of each, and duly acknowledged as required by law, and duly filed and recorded; that at the time of the making of each of said contracts said property constituted the homestead of the respective parties; that Brown complied with each of his said contracts, whereby he became entitled to the recovery of his debt as against each contract, but that no part of same had been paid, and was all past due.

It was further alleged that the materials which he furnished as to each of said three contracts had enhanced the total value of each tract at least to the extent of his debt

---

there against, and that by reason of article 5459, R. S. 1925, he had a first and prior lien on the improvements on each of said tracts, and .that said land was not otherwise improved, and that the improvements placed thereon under his contracts were suitable and judicious, and that to remove the said house from each tract would injure the value of the land and premises, and would especially injure said Brown because the value of the materials if removed, after tearing down the house, would not be worth as much as one-third of the amount mentioned in the contract, and that it would be to the interest of all parties concerned that the property be sold as a whole; that is, each tract together with the house thereon be sold separately as a whole, and the proceeds derived therefrom prorated.

It is further alleged that H. Engelking joined in each of the three contracts above mentioned for the purpose of releasing any lien he had on said land, and it was alleged that Wetzig was claiming some interest in said land, and that J, E. Webb had taken chattel mortgages on certain personal property of the two Viljoens and Henry Snyman to secure any indebtedness owed to said Webb and which might be secured by lien on said land, and that the court should marshal the securities and assets so as to require Webb to seek satisfaction out of the other securities in so far as they should be sufficient, and prayed that he recover his debt, together with interest and attorney's fees and costs, and that his lien be adjudged a prior lien and foreclosure of same ordered or, in any event, that he be awarded out of the proceeds from a separate sale of each of the three tracts, with the house thereon, the amount which the improvements on said tracts enhanced the value, or, if the foregoing relief be denied, that he be permitted to remove the house on each tract, or that the house on each tract be sold separately, and for the marshaling of assets and securities, and for general relief.

Wetzig filed . answer and cross-action against all the above-mentioned parties, alleging that in December, 1923, John C. M. Snyman delivered to him eleven notes, aggregating $22,700, bearing interest and providing for attorney's fees, and being secured by vendor's lien on the four surveys above mentioned; that thereafter he transferred, at the request of said Snyman, two of said notes, aggregating $8,500, to the Federal Land Bank of Houston, and that he still holds the remainder of said notes, except note No. 2 for $1,000, which he had transferred to Webb, and claiming that he had a first lien on all of said real estate, and praying for foreclosure of his lien in satisfaction of the notes above mentioned.

Brown filed supplemental answer and cross-action showing that he had not claimed any lien on survey numbered 137, but only on the other three surveys, and reasserting his right to protection and to sale of each survey and the house thereon as a whole, and praying also that the other parties be required to seek satisfaction out of survey numbered 137 in so far as possible.

Webb filed supplemental petition. All the other parties except John C. M. Snyman and H. Engelking filed answers, including disclaimers.

Trial was had to the court without a jury, and on July 1, 1927, the court rendered judgment, which, briefly stated, gave Wetzig judgment for $15,149.20 and adjudged that he had a prior lien on all four of the surveys to secure same; gave Webb judgment for $14,275.28 and adjudged that he had a lien on all four surveys to secure same, inferior only to the lien of Wetzig; gave Brown judgment against Henry Snyman for $1,481.04 and adjudged same to be a lien on survey numbered 136, but inferior to the liens of Wetzig and Webb; gave Brown judgment against C. A. Viljoen for $2,132.04 and adjudged it to be a lien on survey numbered 144, but inferior to the lien of Wetzig and Webb; and gave Brown judgment against J. C. Viljoen for $1,342.69 and adjudged it to be a lien on survey numbered 130, but adjudged it to be inferior to the liens of Wetzig and Webb. The judgment further provided that Wetzig and Webb exhaust their liens as against survey numbered 137 by providing for sale of that survey first. It was further decreed that the liens of the above parties be foreclosed, but that order of sale be stayed until December 1, 1927, and that Brown should have the right to remove the three dwelling houses at any time within 90 days after a sale was had, or, at Brown's election, that the order of sale might provide for separate sale of each house with the right in the purchaser to remove same within such time. Brown excepted to the judgment in all particulars, gave notice of appeal, and requested findings of fact and conclusions of law.

The trial court made and filed findings of facts and conclusions of law. There being no objection made to these findings of fact, and no additional findings suggested, and the assignments of error and propositions thereunder being based entirely on the conclusions of law reached by the trial court, and the judgment based on the facts found and stated, we adopt as our own the facts found by the trial court. They follow:

"The court finds that cross-plaintiff E. L. Wetzig, the owner, on December 1, 1923, conveyed surveys Nos. 130, 136, 137, and 144 on the island in the San Elizario grant, in El Paso county, Tex., each containing 48 acres more or less, to the defendant John C. M. Snyman and retained a vendor's lien to secure the payment

of eleven notes given for the purchase price of the land; Nos. 1 and 3 of said series being for $7,500 and $1,000, respectively; No. 2 for $1,-000; Nos. 4, 5, and 6 each for $1,000; Nos. 7, 8, 9, and 10 for $1,500 each; and No. 11 for $4,-200—Nos. 1 and 3 being thereafter transferred by Wetzig to the Federal Farm Loan Bank of Houston, which is not a party in this suit, and said notes so transferred being the first lien on the land. The said Wetzig owned and sued on notes Nos. 4 to 11, inclusive, of said series; said notes all being also secured by a deed of trust on the land; and the court finds that cross-plaintiff E. L. Wetzig is entitled to a judgment against John C. M. Snyman on said notes in the sum of $13,-200 principal, $572 interest, and $1,377.27 attorney's fees, and that he has and is entitled to foreclosure of the vendor's lien against all of the above-described real estate and against all the other parties to this suit, subject only to the lien of the Federal Land Bank of Houston.

"(2) The court further finds that John C. M. Snyman about January 2, 1925, conveyed the above-described real estate to the defendant H. Engelking and retained a lien to secure three notes executed by the said H. Engelking bearing said date and payable to the order of said John C. M. Snyman for $5,000, $4,823.85, and $1,000, payable to the order of said John C. M. Snyman, which said notes are owned by the defendant J. E. Webb, who also owns note No. 2 of the series executed by John C. M. Snyman, payable to the order of E. L. Wetzig; and J. E. Webb is entitled to judgment against the defendants J. C. M. Snyman and H. Engelking on said notes for the sum of $11,823.85, together with interest and attorney's fees aggregating a total amount of $14,275.28, for which debt the plaintiff J. E. Webb has a vendor's lien on said real estate subject only to the prior liens of the Federal Land Bank of Houston and cross-plaintiff E. L. Wetzig thereon. The court further finds that the plaintiff J. E. Webb owns four certain series of notes payable to the order of H. Engelking, executed by the defendants J. C. Viljoen and wife, C. A. Viljoen and wife, Wynan Viljoen, and Henry Snyman and wife as part of the purchase price for said surveys separately purchased by said defendants respectively, which notes were transferred to the said J. E. Webb subsequently to the contract between said J. C. Viljoen and wife, C. A. Viljoen and wife, and Henry Snyman and wife, and Edgar D. Brown hereinafter mentioned, and which notes are not sued upon by plaintiff or included in the judgment awarded him and are mentioned in connection with the following finding relating to the Edgar D. Brown contracts.

"(3) The court further finds that cross-plaintiff Edgar D. Brown, doing business under the name of Edgar D. Brown Company, about January 5, 1926, entered into a contract with Henry Snyman and wife, Susan F. Snyman, whereby the said Edgar D. Brown Company agreed to furnish said parties materials for the construction of a dwelling house on said survey 136 purchased by them, and said parties executed in payment therefor their note in the sum of $1,-026.54, and in the contract agreed to pay the sum together with the further sum of $150 for extras to be furnished and granted a mechanic's lien to said Edgar D. Brown Company on said survey and the improvements thereon and upon the improvements so to be constructed thereon to secure the same; that about the same date the defendants C. A. Viljoen and wife entered into a similar contract with Edgar D. Brown Company granting a mechanic's lien on said survey 144 and the improvements thereon and to be erected thereon as security for the sums of $1,143.39 and $400, respectively, evidenced by notes of even date therewith, and in addition thereto the sum of $150 for extras, for materials and labor to be used in constructing a dwelling house on said survey 144; and about December 30, 1925, the defendant J. C. Viljoen and wife entered into a contract with the said Edgar D. Brown Company whereby they granted a mechanic's lien on survey 130 to secure their note of even date for $989.80 and the additional sum of $150 for extras and for materials and money for labor to be advanced and furnished by said Edgar B. Brown Company for the construction of a dwelling house on said survey 130; each of said contracts reciting the property to constitute the homestead of the several owners and granting in the mechanic's lien contracts, and each of said contracts was duly executed and acknowledged by the respective husbands and wives to make the same valid in form, and the defendant H. Engelking joined in each of said contracts for the recited purpose of subordinating the notes held by him on the respective surveys (being the notes referred to in the foregoing paragraphs as held by plaintiff but not sued on) to the liens so granted in said contracts to the said Edgar D. Brown Company. The court further finds that cross-plaintiff Edgar D. Brown Company is entitled to recover on said respective contracts as follows: Against Henry Snyman and wife in the sum of $1,026.54 principal, $169.86 interest, and $134.60 attorney's fees, and the further sum of $150; the said Edgar D. Brown Company is entitled to recover against the defendants C. A. Viljoen and wife the sum of $1,543.39 principal, $244.83 interest, and $193.-82 attorney's fees on the notes executed by them, and in addition thereto the further sum of $150; and the said Edgar D. Brown Company is entitled to judgment against J. C. Viljoen and wife in the amount of $915.89 principal, $154 interest, and $122.06 attorney's fees, and in addition thereto the further sum of $150.

"(4) The court further finds that said survey 136 without the improvements thereon is of the reasonable market value $175 per acre; that said survey 144 without the improvements thereon is of the reasonable market value $110 per acre; and that said survey 130 without the improvements thereon is of the reasonable market value $95 per acre; that said dwelling house and improvements so constructed upon survey 136 adds to the value thereof $1,600; that the dwelling house and improvements so constructed on survey 144 add to the value thereof $1,-400; and the house and improvements on 130 adds to its value in the sum of $1,500; and further that, to dismantle and remove said dwelling and improvements from the land, they would each be only about $125 in value in the material that could be salvaged therefrom, it being necessary to dismantle said buildings in order to remove same from the land; and that each of said houses and incidental improvements with the land incident thereto, together with access to and frontage on the highway to the extent of about one-half acre to each, would be of value about $500 if sold with such incidental area and not removed from the land.

"(5) I further find that at the time the contracts were made between Edgar D. Brown and Henry Snyman and wife, C. A. Viljoen and wife and J. C. Viljoen and wife, respectively, relating to said surveys 136, 144 and 130, respectively, each of said surveys was the homestead of the respective owners thereof so contracting. The house on each survey was a suitable and reasonable improvement."

The trial court stated his conclusions of law as follows:

### "Conclusions of Law.

"I conclude that E. L. Wetzig's lien has priority over the liens of the other parties on the real estate exclusive of the improvements mentioned, and J. E. Webb's lien has priority over the lien of Edgar D. Brown thereon.

"I further conclude that the lien of cross-plaintiff Edgar D. Brown, doing business under the name of Edgar D. Brown Company, attached to the respective houses and improvements for which the material and labor were furnished in preference to the liens of cross-plaintiff Wetzig and plaintiff Webb existing on the land at the time the contracts therefor were made, and Brown is entitled to have such improvements sold separately from the land. But each of the said surveys covered by the contracts, respectively, being at the time the homestead of its owner, such contracts and facts did not create a constitutional lien thereon, and Brown secured only a voluntary contract lien thereon, respectively, to acquire the amounts against the same, and such lien is as to the land in each of these surveys subject and subordinate to the pre-existing liens of E. L. Wetzig and J. E. Webb thereon."

### Opinion.

Appellant submits his assignments of error as propositions. Propositions 1, 2, 3, and 4, respectively, submit assignments 4, 5, 6, and 7. These four might be discussed together. They present the principal question of law involved in the case. The first three of these four assignments claim error in the trial court's conclusions of law and judgment. It is insisted that the facts found that the house on survey No. 130 enhanced the value $1,500; that the house on survey No. 136 enhanced the value $1,600; that the house on survey No. 144 enhanced the value $1,400; and that in each instance the court was in error in refusing to order the sale of the entire survey and improvements thereon together, with the right of Brown to recovery of his debt against said surveys out of the proportion of the proceeds of sale of the whole property (the lands and the improvements) as the values of the improvements bear to the total price. The insistence is that the rules of law and equity in such cases are that where one had a lien on land, as did Wetzig and Webb, and another has a debt against and a lien on the improvements on such lands (as Brown has in this case), the value of the land and the improvements should be determined separately and in relation to the value of the whole and a sale

be had of the whole, and the proceeds prorated so that the proceeds from a sale of the whole be applied to the discharge of the liens which are prior on the land, and the proceeds which are the proportionate value of the improvements be first applied to those liens which are paramount on the improvements. Under the fourth proposition (seventh assignment of error), error is asserted to the trial court's conclusion of law and judgment, insisting that under article 5459 of the Revised Statutes, as construed by the Supreme Court in Land Mortgage Bank of Texas v. Quanah Hotel Co. et al., 89 Tex. 339, 34 S. W. 730, the court should have determined the percentage which the improvements placed on each of the three surveys by Brown enhanced the value of each survey, and should have ordered sale as to each of the three surveys of land and improvements thereon as a whole, with proration of the proceeds in accordance with the percentage which the improvements on each survey enhanced each survey considered separately with the improvements thereon as now existing.

The facts found show that the houses on the several tracts of land were so constructed as that their removal complete as a house would be impossible, and that it would be necessary to dismantle each house in order to effect removal of the materials, as the houses are each constructed of concrete, adobe, and tile, and, each house dismantled, the material of each would be worth only $125, while the values of each tract with the houses intact are enhanced, as found, survey No. 136, $1,600, survey No. 144, $1,400, and survey No. 130, $1,500. Propositions 5 and 6 (assignments 8 and 10) complain of the decree allowing a separate sale of each house and removal from the land in 90 days.

It might be well to restate that the house on each survey was found to be a suitable and reasonable improvement, and that the three surveys, severally, constituted the homestead of the respective owners at time of the contracts with Brown, and that it is a fact found that it would be necessary to dismantle each of the three houses to remove them from the land, and that to do so would reduce their values as stated. It is apparent also the lands involved here are lands in the country, and not in a city, town, or village.

The Legislature in 1889 undertook a revision of the lien laws as will appear from Gammell's Laws, vol. 9, p. 1138, and the law as there enacted, unchanged in so far as any question here is involved, has been carried forward in each revision of the Statutes, now appearing as article 5452 et seq. of the 1925 R. C. S. By that law it was evidently intended to prescribe the terms and conditions on which the mechanic's lien, granted by the Constitution, might be fixed, both on homestead and nonhomestead property. The orig-

inal law contained a section, which, with some slight change in verbiage and extending its application to railroads, has now become, in the last revision, article 5459, and which appellant Brown insists has application to the facts of this case. The article reads:

"*Priority of Lien.* The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished or work was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which the houses, buildings or improvements, or railroad have been put, or labor performed, and the person enforcing the same may have such house, building or improvement, or any piece of the railroad property, sold separately; provided, any lien, incumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for."

Article 5458 of the same title and chapter provides that if this lien (mechanic's, contractor's, and materialmen's) is against land in the country, it shall extend to and include 50 acres upon which such house building or improvements are situated, or upon which such labor has been performed.

Chapter 2 of title 90, beginning with article 5452, R. C. S. 1925, and all articles in that chapter deal with the whole subject of mechanics', contractors', and materialmen's liens, the time and manner in which the liens provided for may be fixed, so that the statement in the beginning of the article quoted, "the lien herein provided for," means and includes the liens and the manner of fixing the liens by affidavit, contract, and filing it, and on the homestead by joinder of the wife and acknowledgment, and including the giving of priority of the liens which attach to the house, building, and improvements in preference to any prior lien or incumbrance or mortgage upon the land upon which the houses, buildings, or improvements or labor is performed.

The construction to be given article 5459 has been before the courts as to its priority of lien provision, and yet under the varied conditions of the facts in each particular case a proper application of the article is difficult. The three surveys on which Brown built the houses were homesteads.

Section 37, art. 16, of our state Constitution, provides that mechanics, artisans, and materialmen of every class shall have a lien upon the buildings for the value of their labor done thereon, or material furnished therefor, and directs that the Legislature provide for the enforcement of said liens. Section 50 of the same article of the Constitution has application to the homestead of a family. That section does not itself create a lien as does the preceding section 37, but is permissive only under the circumstances stated, two of which circumstances are involved in this case, viz., a debt for the purchase money and for work and material used in constructing improvements thereon, and the last mentioned only when contracted for in writing as provided in said section. When the liens permitted are created, the section does not speak as to preference of the one over the other, but when created they are the same in degree on the property on which the lien is created with any other lien. Section 51 of article 16 of the Constitution provides that the homestead, not in a town or city, shall consist of not more than 200 acres of land with the improvements thereon. No question is raised here as to the existence of the lien on the several surveys of land for the purchase money now held by the appellees, and no question is raised as to the existence of the lien on the improvements now held by appellant for work done and material furnished in constructing the improvements thereon.

Some question is raised as to whether the lien held by Brown is a constitutional, a statutory, or only a contract, lien.

The material question presented is as to the priority or equality of the one lien over or with the other in foreclosing the two liens in the same suit. Otherwise stated, the issue as applied to the facts presented is whether appellant's mechanic's and materialmen's lien shall have prorated rank or right with appellees' pre-existing vendor's lien as to the land and improvements, or whether appellant's lien as to the land shall be limited so as not to affect the pre-existing vendor's lien.

Appellant refers us to the case of Land Mortgage Bank v. Quanah Hotel Co., 89 Tex. 332, 34 S. W. 730, as sustaining his contention; appellees refer us to State Trust Co. v. Morrison et al., 282 S. W. 214, by the Commission of Appeals, Section A, as sustaining their contention. Both appellant and appellees apparently contend that each of the two cases is in point, and that an irreconcilable conflict exists between the two. Judge Bishop, however, in writing the opinion for the Commission of Appeals, distinguished the two cases in holding that in the Hotel Case the question of homestead was not involved, and that in the Hotel Case the court held that the provision of the article of the statute involved gave to the mechanic's lien on the building constructed priority over the existing incumbrance of the vendor's lien on the lots, and that the article of the statute has reference to liens created by law and not to voluntary liens created by contract only as in the Morrison Case.

We think, however, we need not undertake further to harmonize or differentiate the two cases.

It is evident that appellees, owning the certain notes involved, have a vendor's lien on the several surveys of land involved in this controversy, to secure their payment, and that said notes and lien existed before the in-

ception of the mechanic's lien now held by appellant on the houses on the said surveys. It is equally evident that appellant Brown has a just and valid debt and mechanic's lien on the houses on the same surveys of land; said debt and lien, however, are subsequent in time to the vendor's lien. The lien of appellees and the lien of appellant conflict in that the vendor's lien has precedence upon the lands, and the mechanic's lien has precedence upon houses and improvements by which the mechanic's lien arose; the question presented is as to the equities to be adjusted or reached.

The facts found by the trial court show the values of the several surveys of land separate and apart from the houses, that is, the improvements built thereon, and the facts found show the several values of the buildings on the surveys separate and apart from the lands. The facts also show that the removal of the several houses from the lands is impossible without destroying their values.

We have concluded that the Bank v. Quanah Hotel Case, supra, is sufficiently similar in its facts to be in point in this case. A brief statement of the facts of that case shows that in 1890 the hotel company entered into a written contract with Rempe for the construction of the hotel building on the lots stated, lots 10, 11 and 12, and for the consideration stated. The building was constructed as contracted and the mechanic's lien duly perfected by Rempe. Subcontractors and materialmen to whom Rempe became indebted for material in the construction of the hotel building duly preserved their liens. Rempe brought suit against the hotel company for the balance due him and to foreclose his mechanic's lien on the lots and house. The subcontractors also filed suits which were consolidated, the trial resulting in favor of Rempe against the hotel company foreclosing his lien upon the lots and the hotel building, and each subcontractor whose claim was allowed recovered against Rempe. The judgment decreed the sale of the lots and improvements and a distribution of the proceeds among the creditors. The property was sold and deed made. When the Quanah Hotel Company bought the lots, there was then upon the lots 10 and 11 a vendor's lien for $2,000, with interest and attorney's fees in case of suit upon the debt evidenced by a note. The Quanah Hotel Company had assumed its payment. In 1891 the Land Mortgage Bank loaned to the Quanah Hotel Company $8,000 and took a note for the sum with a deed of trust on all three of the hotel lots to secure its payment. At the time the hotel company borrowed the money, it was understood and agreed that the vendor's lien should be discharged, and subsequently it was the understanding and agreement that a part of the money loaned was applied to the payment of the $2,000 vendor's lien note, with the agree-

ment that the plaintiff bank should be subrogated to the rights of the holder of the note. At the time the bank loaned the money and took the deed of trust the bank knew that the hotel building was then being constructed, and that Rempe had the contract to build it. The hotel company failed to pay the note at maturity. After the sale of the property under the judgment between the hotel company and Rempe and the subcontractors first mentioned, the Land Mortgage Bank brought this suit against the Quanah Hotel Company to collect its debts and foreclose the deed of trust lien upon the property. The bank alleged that it had paid off and discharged the $2,000 vendor's lien upon the lots 10 and 11, and was subrogated to the rights and prior equities of the vendor therein. Judgment was rendered in favor of the plaintiff bank against the hotel company and Rempe on the note and foreclosure of the deed of trust lien upon all the property with the qualification that the sum paid in discharge of the vendor's lien should hold a prior lien upon lots 10 and 11, and that the amount of the Rempe judgment against the hotel company should hold a prior lien upon lot 12 and the buildings and improvements upon all the lots, the proceeds to be distributed among the purchasers of said lots and property according to their several interests therein. It was found that the house and improvements could not be removed from the lots without destroying their value, and it was ordered that the entire property be sold together. Lots 10 and 11 were ascertained to constitute one-ninth part of the value of the whole property. It was ordered that in case the sale was made the proceeds should be applied (1) to the payment of cost and execution of the order of sale; (2) one-ninth part or as much as needed to be applied to the payment of the sum paid in discharge of the vendor's lien, and if there should be more than sufficient to satisfy the vendor's lien the excess to be applied to the mechanic's lien; (3) the claims of the purchasers of the lots and property under the judgment of Rempe according to their several interests to be paid out of the remaining eight-ninths; (4) any amount remaining to be paid to the purchasers of the lots and property. The bank appealed, and the Court of Civil Appeals affirmed the judgment. From the action of that court in affirming the judgment of the trial court, the bank prosecuted an appeal to the Supreme Court. The assignment discussed by the Supreme Court was the fourth which questioned the correctness of the judgment as to the priority of the liens adjudged therein. It is said in the opinion that the trial judge applied the correct rule in apportioning the proceeds of the property. It is also said in the opinion that the rights of the parties under the circumstances of the case are governed by article 3171, Sayles' Supplement to Revised Statutes, now article 5459,

above quoted. It is also said in the opinion that article 5459 settled the question against the bank's claim that it should have its vendor's lien satisfied out of the money derived from the sale of the entire property in preference to the mechanic's lien, holding that the priority of the mechanic's lien upon the building, over the existing incumbrance of the vendor's lien upon the lots 10 and 11, is clearly stated in the law, and that the portion of the bank's claim which represents the sum paid in discharge of the vendor's lien and to which right the bank was subrogated, the bank had a prior right over the mechanic's lien to all that lots 10 and 11 would sell for under the foreclosure and a subordinate right to that of those claiming under the mechanic's lien in the proceeds of the sale of lot 12 and the buildings, and then states certain secondary rights which have no application here. The Supreme Court held that lots 10 and 11 could not be sold separately from the other property, and that all must be sold together, and that the apportionment of the proceeds so as to protect the rights of all parties was the difficulty to be solved. After reviewing and quoting with approval from Whitehead v. First Methodist Church, 15 N. J. Eq. 135, Bradley v. Simpson, 93 Ill. p. 93, and North Presbyterian Church v. Jevne, 32 Ill. 220, 83 Am. Dec. 261, to which quotations we refer, but for brevity we omit, the Supreme Court stated its conclusions in the following words:

"If the rule laid down be fairly and properly enforced, that is, if the fair market value of the lot at the time, without the improvement, be ascertained, and also the market value of the house at the same time, considering the purposes for which it is to be used and all the surrounding circumstances, be likewise ascertained, upon a sale of the property as a whole, the proceeds in gross will represent the value of both, and the proportion that the value of each bears to the value of the whole will be a just basis for division of the money derived from the sale of such property. It is true that circumstances might exist under which the lot would sell for a greater price without that particular house upon it and thus the security of the prior incumbrance be to some extent reduced. But these are matters of speculation into which the court cannot enter in adjusting the business complications which arise in the course of such transactions. We believe that the rule stated is the safest that can be adopted for determining the rights of parties under these circumstances. Every man who sells lands or takes a mortgage upon them in this state does so with the knowledge that they may and probably will be improved by the erection of some kind of structures thereon and that the law as it exists gives to those who contribute by their labor or material to the improvement of such property a prior lien upon the buildings thus erected,"

—and affirmed the case appealed from the Fort Worth Court of Civil Appeals, 32 S. W. 573. In the opinion of that court some additional features of the statute are discussed which we wish to quote:

"The further question remains, Was this lien [vendor's] properly restricted by the relative value of the lots without the improvements? The Constitution provides for the mechanic's lien on the house, and the law declares that it shall be superior to the lien on the land, but provides that the house may be separately sold and removed from the premises.

"In this case, however, the proof showed that the character of the building was such that this could not be done. This statute not providing for such case, general principles of procedure must be looked to. Waldroff v. Scott, 46 Tex. 1. As the three lots and the hotel building situated thereon could not have been separately sold, we do not see how the rights of the parties could have been equitably adjusted except by a sale of the entire property in bulk, with some such distribution of the proceeds of sale as was decreed. No better method than that has been suggested. * * * True, the statute also provides that pre-existing liens on the land shall not be affected thereby; and it seems to be insisted that the method of adjustment adopted violates this provision. It is the legal status, we think, of such pre-existing liens which comes within the protection of the statute, and not their commercial value, which is as liable to be affected by an injudicious improvement of the realty as from other causes."

We have concluded that the Bank v. Hotel Co. Case, to which we have so extensively referred and quoted, is in point in this, and conclusive, on the questions here discussed. See, also, Oriental Hotel Co. v. Griffiths et al., 88 Tex. 583, 33 S. W. 652, 30 L. R. A. 765, 53 Am. St. Rep. 790; Kahler v. Carruthers, 18 Tex. Civ. App. 216, 45 S. W. 160 (writ denied), holding that:

"Where a prior lien for the purchase money existed upon the lot at the time the mechanic's lien was fixed, it is proper for the district court to decree both lot and building to be sold together as a whole, and the proceeds prorated between the lienholders on the lot and those holding liens on the building, where the court finds that the building cannot be removed from the lot without great loss, damage, or expense."

We have reviewed a number of cases stressing the distinction between cases where the improvements could be removed from the lot without destroying the value of the improvement, and cases relating to repairs on pre-existing buildings or improvements, and in which cases the rule announced in Bank v. Quanah Hotel Co. was not applied. See Sullivan & Co. v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S. W. 307; Citizens' National Bank v. Strauss, 29 Tex. Civ. App. 407, 69 S. W. 86; Eardley v. Burt (Tex. Civ. App.) 182 S. W. 721; Quinn v. Dickinson (Tex. Civ. App.) 146 S. W. 999; Mogul P. & P. Co. v. Southern Engine & P. Co. (Tex. Civ. App.) 244 S. W. 213; 31 C. J. 307.

In the matter of fixing mechanic's lien on the homestead we understand the rule to be that when the wife has executed the written contract in the manner provided by section 50

of article 16 of the Constitution and article 5460 of the R. C. S., the rights and remedies of all parties stand and are proceeded with as to all persons just as contracts for other improvements are directed by the statutes to be conducted. The only distinctions are in the requirement that the wife must be a party to the contract affecting the homestead and in the mode of its execution. Fullenwider v. Longmoor, 73 Tex. 480, 11 S. W. 500.

We need not discuss other assignments submitted.

We have concluded that the judgment of the trial court should be reversed and that judgment be here rendered that each of the three surveys be sold separately, the land and the house as to each survey being sold as a whole, and the proceeds apportioned in accordance with the views expressed in this opinion. The parties are granted 10 days to agree upon and submit the form of the decree to be entered.

Reversed and rendered.