### WM. CAMERON & CO., Inc., v. CRABB.
### No. 2575.

Court of Civil Appeals of Texas. El Paso.

Oct. 8, 1931.

Rehearing Denied Oct. 29, 1931.

Haag & Stubbeman, of Midland, and Sleeper, Boynton & Kendall, of Waco, for appellant.

Chas. Yonge, J. M. Caldwell, G. W. Dunaway, and W. R. Smith, Jr., all of Midland, for appellee.

PELPHREY, C. J.

This suit was instituted by appellee against Clemmie Pruitt Woods and her husband, to foreclose a deed of trust lien upon certain property in Midland county, Tex. Appellant intervened in the suit, claiming a materialman's lien on certain of the property.

The trial court filed the following findings of fact, which are not complained of:

"1. That defendant, Clemmie Pruitt Woods, owns as her separate property, lots 13, 14 and 15, in Block 65, of the original town of Midland, Midland County, Texas; she having acquired this property prior to her marriage to defendant W. E. Woods.

"2. Before December 1, 1929, defendant Clemmie Pruitt Woods, whose name was then Clemmie Pruitt, had definitely determined to construct a building upon said lots 13, 14 and 15; but actual construction work did not commence until December 11, 1929; until this last date the lots were vacant and unimproved.

"3. On December 1, 1929, Clemmie Pruitt made, executed and delivered to the plaintiff (appellee) her certain note of that date, in the principal sum of $17,500.00, due and payable at Midland, Texas, June 1, 1930, bearing interest from date at the rate of 7% per annum, and providing for 10% on principal and interest then due, if placed in the hands of attorneys for collection. At the time that said note was executed and delivered to plaintiff (appellee) a Deed of Trust securing the payment of same was made to G. W. Dunaway, Trustee, conveying said lots 13, 14 and 15. No money was advanced by R. C. Crabb to Clemmie Pruitt at the time said note was executed, but said note was given for the purpose of covering whatever money might thereafter be advanced by R. C. Crabb to retire a Vendor's Lien in the sum of $1600.00 held by John B. Thomas against said lots, and to aid Clemmie Pruitt in erecting on said lots the garage building which was thereafter erected. On the 6th day of December, 1929, R. C. Crabb advanced to Clemmie Pruitt the sum of $1600.00, which amount was used to pay off the Vendor's Lien on said lots held by Jno. B. Thomas. Beginning with date of December 17, 1929, and on divers dates thereafter, R. C. Crabb advanced to Clemmie Pruitt, for the purpose of erecting the garage building in question, various sums of money,

totaling $6246.00; in addition to the amount advanced to retire the Vendor's Lien.

"4. On December 11, 1929, with the approval and at the request of Clemmie Pruitt, intervenor, Wm. Cameron & Company, Inc., began furnishing materials for the construction of the garage building upon said lots 13, 14 and 15, and continued to furnish materials on divers dates, the last of said materials being furnished on the 24th day of June, 1930. Thereafter, on the 25th day of June, 1930, intervenor, Wm. Cameron & Co., Inc., duly filed its mechanic's and materialman's lien on said lots 13, 14 and 15, together with the building thereon, in the County Clerk's office of Midland County, Texas, to secure a balance of $1117.05, at the time owing to said intervenor by virtue of its having furnished said materials.

"5. Plaintiff, R. C. Crabb (appellee here), has a valid existing claim against defendants, W. E. Woods and wife, Clemmie Pruitt Woods, for the sum of $10,983.68, of which amount $9883.68 is secured by a Deed of Trust on said lots 13, 14 and 15, and of which amount, $1100.00 is secured by a Deed of Trust lien on the North 50 feet of the NW ¼ of Block 40, Homestead Addition to the town of Midland, Midland County, Texas. Intervenor, Wm. Cameron & Company, Inc., has a valid existing claim against defendants W. E. Woods and wife, Clemmie Pruitt Woods, in the sum of $1150.75, which is secured by a mechanic's and materialman's lien upon lots 13, 14 and 15.

"6. The garage building constructed on said lots 13, 14 and 15, is permanently affixed to the lots, and its removal complete, as a building, would be impossible.

"7. With respect to said lots 13, 14 and 15, and the garage building constructed thereon the lots constitute one-third part of the total value of the whole property and the garage building located thereon constitutes two-thirds part of the total value of the whole property."

The trial court concluded that appellee's lien was superior to the lien of appellant on lots 13, 14, and 15, block 65, and the building thereon, and rendered judgment decreeing that the property be sold; that the costs of court and of the sale be first paid; that the balance remaining be applied to the payment of appellee's claim, and that any remaining balance be applied to the payment of appellant's claim.

Wm. Cameron & Co., Inc., have perfected their appeal to this court, and present three propositions upon which they seek a reversal, as follows: First, that appellant had a first and prior lien upon the building constructed upon the lots, and the court having found that a removal of the building would be impossible, and that it constituted a two-thirds part of the total value of the whole property,

the proceeds of the sale under foreclosure should be prorated according to the respective lien interests of appellant and appellee; second, that the court having found that Clemmie Pruitt Woods had, prior to the execution of the deed of trust, definitely determined to construct a building on the lots, and appellee having taken his deed of trust knowing of such determination, and advanced the money for the purpose of aiding her in constructing the building on the lots, his lien had its inception subsequent to the lien of appellant; and third, that the sum of $6,246, being advanced by appellee subsequent to the beginning of actual construction on the building, the lien of appellant had its inception prior to appellee's lien for that amount, and was superior thereto.

Article 16, § 37, of the Constitution reads: "Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the legislature shall provide by law, for the speedy and efficient enforcement of said liens."

Pursuant thereto, the Legislature enacted the following statutes:

"Art. 5452. Any person or firm, lumber dealer or corporation, artisan, laborer, mechanic or sub-contractor who may labor or furnish material, machinery, fixtures or tools; (a) to erect or repair any house, building or improvement whatever; * * * upon complying with the provisions of this chapter shall have a lien on such house, building, fixtures, improvements, land reclaimed from overflow, or railroad, and all of its properties, and shall have a lien on the lot or lots of land necessarily connected therewith, or reclaimed thereby, to secure payment for the labor done, lumber, material, machinery or fixtures and tools furnished for construction or repair. * * *"

"Art. 5459. The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which the houses, buildings or improvements, or railroad have been put, or labor performed, and the person enforcing the same may have such house, building or improvement, or any piece of the railroad property, sold separately; provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for."

In the case at bar, we find that while the deed of trust sought to be foreclosed was executed on December 1, 1929, no advancements were made thereon until December 6, 1929, when the sum of $1,600 was advanced and used to pay off the vendor's lien on the lots; that the construction of the building began on December 11, 1929, and no further advancements were made by appellee until December 17, 1929.

■ The lien of appellant had its inception on the date that construction began (Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S. W. 652, 30 L. R. A. 765, 53 Am. St. Rep. 790), and the only advancement made by appellee prior to that date was the $1,600 to discharge the vendor's lien. We think appellee had a lien on the lots for that amount, with interest from December 6, 1929, superior to the lien of appellant.

■■ The court having found that appellee's lien was only on the lots, then appellant has a lien on the improvements prior even to the lien for that sum. All the money advanced by appellee, except that sum, was for the purpose of erecting the improvements, and, such advancements having not been made until after the construction work was begun, the lien for such advancements was inferior to the lien of appellant.

We have concluded that lots 13, 14, and 15, block 65, and improvements thereon, should be ordered sold together; that out of the proceeds of such sale, together with the proceeds of the sale of the north 50 feet of the northwest quarter of block 40, Homestead addition to the town of Midland, Midland county, Tex., the costs of sale and of this suit be paid, together with the costs of executing the sale; that the balance remaining from the sale of lots 13, 14, and 15, block 65, be applied as follows: One-third to the payment of the sum of $1,600 advanced by appellee to discharge the vendor's lien on lots 13, 14, and 15, with interest thereon from December 6, 1929; the balance thereof, if any remain, together with the other two-thirds of the proceeds of the payment of appellant's claim; and, if any balance remain, to the payment of appellee's claim.

We think the above disposition of the proceeds to be the correct one under the holdings in Land Mortgage Bank v. Quannah Hotel Co., 89 Tex. 332, 34 S. W. 730; Brown v. Webb (Tex. Civ. App.) 1 S.W.(2d) 1102; McMullen v. Hammann (Tex. Civ. App.) 34 S.W. (2d) 909.

The judgment of the trial court is reversed, and judgment here rendered in accordance with the above views.

The judgment, in so far as it relates to the north fifty feet of the northwest one-fourth of block 40, is undisturbed.