## H. A. KAHLER ET AL. V. SAMUEL CARRUTHERS ET AL.

### Delivered February 5, 1898.

**1. Evidence—Transaction with Decedent.**

The plaintiff in an action to foreclose a mechanic's lien is not incompetent to tes-- tify as to transactions with the deceased owner merely because the latter's widow and survivor in community is made a party to the suit as such, where she is not a proper party because no judgment is sought against her and she has disclaimed all interest in the property, which had been sold under a deed of trust before the owner's death. Revised Statutes, article 2302, construed.

**2. Assignment of Error.**

Assignments of error can not be considered where the proposition stated and dis- cussed thereunder is not raised by nor embraced in the assignments.

**3. Mechanic's Lien—Original Contract—Fixing Lien.**

One who contracts with the owner to construct the walls of a building, after a previous contract between the owner and another contractor for the construction of the entire building, including walls, had been modified by excepting the walls, is an original contractor and not a subcontractor, and it is not necessary for him to file his contract, and he is not subject to article 3295, Revised Statutes, prescribing the requirements for fixing the lien of a subcontractor.

**4. Assignment of Error.**

An assignment of error to the refusal of the trial court to submit certain special issues to the jury as requested by the plaintiffs in error can not be considered where the record fails to show by bill of exceptions or otherwise that such special issues were ever presented to the court below or called to its attention in any manner.

**5. Practice in Trial Court—Special Issues and Verdict.**

The question as to the validity of a mechanic's lien attacked upon the ground that the property was a business homestead and the contract under which the lien is claimed was not signed and acknowledged by the owner's wife, is properly submitted to the jury by a special issue calling for the ultimate fact as to whether or not the property was a business homestead, supplemented by an instruction with reference to the intention which the owner must have entertained in order to make it his busi- ness homestead. Article 1331, Revised Statutes, as to special verdicts, construed.

**6. Same—Issue Not Raised by Pleading.**

The court upon the trial of an action to foreclose mechanic's liens which are superior to the lien of a prior trust deed as to the building, but inferior as to the lot, properly refuses to submit as a special issue to the jury whether a purchaser of the property under the trust deed executed a mortgage upon the property to his code- fendant to secure the purchase money notes and whether the latter now holds the notes, where no such issue is raised by the pleadings.

**7. Same—Special Issue—Business Homestead—Intention.**

A special issue submitted to the jury thus, "Was the place upon which plaintiff and intervenors are seeking to foreclose mechanic's liens, the business homestead of C. at the time said contracts were executed by C. for the erection of the building?" is not objectionable on the ground that it contains a mixed question of law and fact, and not one of fact only.

**8. Business Homestead—Intention at Date of Contract.**

The question as to the homestead character of a house for the building of which the owner makes a contract depends on the owner's then intention to so use and oc- cupy it in the future, rather than on a subsequent abandonment of that intention,.

so far as concerns the validity of the builder's lien contract, made without the wife's. due written assent thereto.

**9. Mechanic's Liens—Foreclosure and Sale—Prorating Liens.**

A decree foreclosing a mechanic's lien on a building where a prior lien for the purchase money existed upon the lot at the time the mechanic's lien was fixed, may properly direct both lot and building to be sold together as a whole and the proceeds prorated between the lienholders on the lot and those holding liens on the building where the building can not be removed from the lot without great loss, damage, or expense.

ERROR from Dallas. Tried below before Hon. W. J. J. SMITH.

*Leake, Henry & Greer,* for plaintiffs in error.

*R. E. Cowart, Watts, Aldredge & Eckford, Morris & Crow,* and *Thompson & Thompson,* for defendants in error.

HUNTER, ASSOCIATE JUSTICE.—In this action the appellees, Samuel Carruthers, original plaintiff, and Gary & Smith, interveners, sought to foreclose the mechanic's lien given by two certain contracts on a certain two-story brick house in Dallas, Texas, and the lot on which it was erected and which it covered, on Commerce Street, 42½ feet front by 200 feet deep. The suit was originally brought against the Security Mortgage and Trust Company, S. B. Hopkins, Mrs. J. B. Cowan, and W. J. Betterton, and during the pendency of the suit appellant H. A. Kahler was appointed receiver of the property of the said Security Mortgage and Trust Company, and thereupon was made a party defendant in the District Court.

The plaintiff alleged, in substance, that on the 15th day of September, 1891, J. B. Cowan, being then the owner of the lot upon which the building in question was erected, entered into a written contract with plaintiff, wherein he agreed to pay plaintiff $11,850, if he would furnish all material and erect a two-story stone and brick building on the lot aforesaid, according to certain plans and specifications designed and drawn by A. J. Armstrong, architect, who was agreed upon to superintend the work of construction and give certificate of completion according to contract when finished.

Plaintiff also alleged that soon after the signing of this contract it was agreed between him and Cowan that Cowan should have the right to furnish the brick and stone and put up the walls of the building, and for this he was to have credit on the original contract price of $2660.80; that he completed the building according to his contract on the 21st of December, 1891, and the same was accepted by Cowan, and that after giving the credit aforesaid, there remained due him the sum of $9189.20, with legal interest from said last named date; that he had fixed his lien on the house and lot within four months, according to the statute, by filing and recording his contract in the office of the clerk of the County Court of Dallas County: that J. B. Cowan died on the 20th day of April, 1892, hopelessly insolvent, leaving Mrs. J. B. Cowan his surviving widow and

survivor in the community estate; that no administration was ever granted upon his estate, and none was necessary; that the Security Mortgage and Trust Company, S. B. Hopkins, and W. J. Betterton were claiming some title or interest to the lot and building, but that his lien was superior to said claim; that the lot was worth $5000, and the house thereon was worth $12,000; and prayed that if the court should determine that his lien on the house was superior to defendant's, and his lien on the lot secondary and inferior, the relative values thereof be found, and that the same be sold together, and the proceeds be distributed in proportion to the respective claims of the parties.

The interveners, Gary & Smith, set up an original contract in substance the same as plaintiff's, made with J. B. Cowan on the 16th day of September, 1891, whereby, in consideration of their furnishing all the material and erecting the walls of the building, Cowan agreed to pay them the sum of $3110, payments to be made every two weeks on account of pay roll and material, the remainder when the work was completed. They also pleaded substantially the same as the plaintiff, admitting credits in the aggregate sufficient to reduce the claim to $1476.34 at the day of completion, December 21, 1891. They also alleged the filing and recording of their contract within four months, according to the provisions of the statute, so as to fix and secure their lien for said amount on both lot and house; and their prayer was substantially the same as the plaintiff's.

The defendants Mrs. J. B. Cowan and S. B. Hopkins answered by disclaiming all title and interest and claim to the property or any part thereof, praying judgment for their costs only.

The Security Mortgage and Trust Company and W. J. Betterton, who adopted its answer, as did also the said receiver, pleaded, among other things, a general denial, and that it held on March 1, 1892, two vendor's lien notes, of $10,000 each, against the lot upon which the building was erected, dated July 7, 1890, and secured by deed of trust of same date, with power of sale, and that J. B. Cowan when he bought said lot on the 22d of June, 1891, assumed to pay said notes; that on said March 1, 1892, said notes being due and unpaid, it caused said lot and building thereon to be sold by the trustee named in said deed of trust, and at said sale W. J. Betterton bought the same, and in payment thereof executed to it three notes of $5000 each, with mortgage on lot and building to secure said notes; that the house and lot were, at the time plaintiff's and intervener's contracts were signed, the business homestead of J. B. Cowan, and that his wife never signed said contracts as required by statute to fix a mechanic's lien upon a homestead, and that consequently there was no mechanic's lien fixed thereon; that Gary & Smith were subcontractors under Carruthers, who had a contract for the erection of the entire building, and had not filed their contract in time to fix a mechanic's lien.

There were also several other issues raised by the pleadings and sub-

mitted to the jury, which we consider now as immaterial to the proper disposition of this writ of error.

Special issues were submitted to the jury, and the court filed its conclusions of law, and rendered judgment and decree on the special findings of the jury establishing Carruther's debt at $11,968.50, and Gary & Smith's at $1922.93, with mechanic's liens of equal dignity, and foreclosing the same on the new building erected by them, which was valued at $10,800, establishing the title to the lot in Betterton and the mortgage company, valued at $6000, and the walls and vault of the old building on the lot valued at $1200, free from all claims and liens on the part of plaintiff and interveners. The decree further established that the building could not be removed from the lot without great loss and expense, and directed a sale of the house and lot as a whole, and distribution of the proceeds in proportion to the values fixed by the decree and the amount of the debts and liens as therein established, directing that three-fifths of the proceeds be divided between Carruthers and Gary & Smith, in the proportion that their respective debts bear to the said three-fifths, and that Betterton and the mortgage company receive the other two-fifths, the same to be paid into court, however, to be disposed of as between them as their interests might be established. Judgment was also rendered against Mrs. Cowan and Hopkins upon their disclaimers, and in their favor for costs. To review this judgment the Security Mortgage and Trust Company and W. J. Betterton have sued out this writ of error.

The facts, as disclosed by the record, are as follows:

1. On September 15, 1891, J. B. Cowan was the owner of the lot on which the building was erected, subject to the purchase money mortgage of $20,000 held by the Security Mortgage and Trust Company, and on that day entered into a written contract with Samuel Carruthers, by which Carruthers contracted to furnish all the material and labor and erect the two-story brick and stone building on the lot. This contract bound Carruthers to build and complete the building entirely, and to furnish all material of every kind; and that he would not allow any lien in favor of any labor or materialman to be fixed on the building, but would pay all such himself.

2. On the date of said contract Cohen was a married man, and the head of a family, and a citizen of the city and county of Dallas, and his wife did not sign or acknowledge the contract.

3. This contract was filed for record in Dallas County on January 22, 1892, and a lien claimed for the original contract price, less a credit of $2660.80, leaving the balance for which suit was brought of $9189.20.

4. J. B. Cowan died intestate in May, 1892, insolvent, and no administration was ever had on his estate. He left surviving him a widow and two children, one of whom died before the trial. No administration was ever opened on his estate.

5. On the 16th day of September, 1891, the interveners, Gary & Smith, made a written contract with J. B. Cowan, whereby they for the

sum of $3110 contracted with Cowan to furnish all the brick, stone, sand, and lime to go into the building, and to furnish all the labor necessary to put the material in place. Cowan's wife did not join in this contract by signing or acknowledging it. It was filed for record April 9, 1892, and after allowing credits a lien was claimed for $1476.34.

6.  J. B. Cowan became the owner of the lot under the following circumstances: On July 7, 1890, the lot and building then on it belonged to W. J. Betterton. On that date, he, joined by his wife, conveyed the property to one H. C. Burlew, taking in part payment two notes for $10,000 each, payable to the order of the Security Mortgage and Trust Company, the deed retaining an express lien to secure the payment of the notes. Burlew, at the same time, executed a deed of trust to J. T. Dargan, as trustee for the Security Mortgage and Trust Company, to secure the payment of the notes, with power of sale in the usual form, in case of default in the payment of principal or interest. Burlew on the 14th day of July, 1890, conveyed the property to W. J. and C. L. Betterton, the grantees assuming the two notes of $10,000 each. The Bettertons conveyed to S. B. Hopkins on May 11, 1891, Hopkins assuming the same notes. S. B. Hopkins conveyed to J. B. Cowan, June 22, 1891, and Cowan assumed the two notes of $10,000 each held by the Security Mortgage and Trust Company, as a part of the purchase money. Thus Cowan became the owner of the lot and the old building, subject to the purchase money lien of $20,000 held by the Security Mortgage and Trust Company, dated July 7, 1890.

7.  In July, 1891, the old building on the lot was burned.

8.  At the time of the burning of the old building, it was occupied and used by Cowan as a place to carry on his business of wholesale liquor dealer. Cowan was a member of the firm of J. B. Cowan & Co., and its successor, Simpson, Davidson & Co., and was the active, managing member of the firm, and stayed in this store up to the time of the fire.

9.  On March 1, 1892, default having been made in the payment of the interest on the two $10,000 Burlew notes, Dargan, as trustee, sold out the property regularly, and W. J. Betterton bought the same at the sale.

10.  On March 1, 1892, W. J. Betterton executed three notes of $5000 each, payable to the Security Mortgage and Trust Company, and secured the same by a deed of trust on the property, and no part of these notes had been paid at the time of the trial.

11.  The building was completed about December 21, 1891, and accepted by Cowan.

12.  The contract of Gary & Smith, interveners, contained the following provisions as to when payments became due thereunder: "Payments to be made every two weeks for account of pay roll and material only, balance to be retained until the final completion of the work and the fulfillment of this agreement."

13.  The building could not be removed from the lot without considerable expense and loss.

14. The evidence was conflicting as to whether the lot was Cowan's business homestead at the time he entered into the building contracts aforesaid, but we conclude with the jury that it was not.

· 15. Carruthers performed his contract in full as made with Cowan, except that it was modified by a subsequent oral agreement between him and Cowan, whereby Cowan was to furnish all material and put up the brick and stone walls, and was to have a credit on the contract price for $2660.80, and Carruthers was thus released from that part of the work of construction. Thereupon Cowan, as owner of the lot, made an original contract with Gary & Smith to do said portion of the work, agreeing to pay them therefor the sum of $3110. No other mechanic's or material-man's liens were fixed upon the building than those of Carruthers and Gary & Smith.

16. Both Carruthers and Gary & Smith were original contractors.

17. At the date of the judgment herein rendered, January 6, 1897, the lot and old wall and vault were worth $7200, and belonged to W. J. Betterton, subject to a vendor's lien secured by deed of trust in favor of the Security Mortgage and Trust Company for $15,000. The new building on the lot as erected by Carruthers and Gary & Smith was worth $10,800. Carruther's debt then amounted to $11,968.50, and Gary & Smith's to $1922.93, and both were mechanic's liens upon the building to the extent of the above valuation, and of equal dignity, and superior to all other liens on said building.

We overrule the first assignment of error, which complains of the admission of the evidence of Carruthers, the plaintiff, with reference to an oral agreement between himself and J. B. Cowan, to the effect that Cowan should have the walls built, and have credit on the original contract therefor, and also of Smith's evidence to the effect that Cowan told him he was building the house to rent, because it is insisted that, Cowan's widow and survivor in community being a party to the suit as such, the plaintiff, as well as the intervener, is precluded from testifying to any transaction with the deceased Cowan or any statement made by him, under article 2302 of our Revised Statutes.

In our opinion, she was not a proper party to the suit, as no judgment was sought against her nor against the estate, and no interest in the property descended to her at Cowan's death, all of his interest therein having been divested by the sale of the trustee under the deed of trust before his death, and invested in Betterton, and she having also disclaimed all interest in the property. She was not, therefore, a party to the suit in the sense contemplated by the statute, since she had no interest in the subject matter thereof, and no claim was made against her in her representative capacity.

The second and sixth assignments of error are overruled, because we think the witnesses qualified themselves to testify as to the market value of the property. But if we were otherwise convinced, we could not consider these assignments, for the reason that the proposition stated and discussed thereunder is not raised by nor embraced in the assignments.

The third assignment, we think, is fully answered by the counter-proposition of counsel for defendants in error, and is not of sufficient importance to be stated or discussed here.

The fourth and fifth assignments are based upon the proposition that Gary & Smith were not original contractors, but were subcontractors under Carruthers, through Cowan, and that it was therefore necessary for them to file their contract and fix their lien under article 3295, Revised Statutes, and that, too, within thirty days after the indebtedness had accrued. We are clearly of opinion that Smith & Gary were original contractors, and being such were not required to file and record their contract to secure their mechanic's lien. The lien of an original contractor is given by the Constitution, and that instrument does not require filing and recording as a condition precedent to the fixing of the lien, as does the statute in cases where the party seeking to fix the lien is other than an original contractor. Bank v. Taylor, 40 S. W. Rep., 879; Strang v. Pray, 35 S. W. Rep., 1056.

The seventh assignment complains that the court erred in not submitting to the jury certain special issues, as requested by plaintiffs in error. The answer to this is that the record fails to show, by bill of exceptions or otherwise, that the said special issues were ever presented to the court or in any manner called to its attention. Acts Spec. Sess. 1897, p. 15; Insurance Co. v. Shearman, 43 S. W. Rep., 1063.

The eleventh assignment complains that the court failed to submit as a special issue whether Betterton, after purchasing the property at trustee's sale, executed his notes for $15,000 to the Security Mortgage and Trust Company, together with a mortgage on the property to secure same, and whether the said company now holds said notes. It is insisted that a finding on this issue is important, in order to adjust the respective rights of Betterton and the mortgage company as to the proceeds of the sale. But we are unable to find any such issue raised by the pleadings in the record. The fact is alleged by the mortgage company, and Betterton answered simply by adopting its answer. The same attorneys represented both parties. The jury found that the mortgage company held a prior vendor's lien of $20,000 in notes against the lot, dated July 7, 1890, secured by deed of trust, and that sale was made thereunder by the trustee to W. J. Betterton on March 1, 1892. The court decreed to Betterton and the company all the proceeds of the sale of the lot, to be paid into court and held until they establish which is entitled to the fund. With this matter the defendants in error had nothing to do, and raised no issue concerning it in their pleadings. We therefore overrule this assignment.

The eighth assignment complains of the submission of the seventeenth special issue, which is as follows: "Was the place upon which plaintiff and interveners are seeking to foreclose mechanic's liens the business homestead of said J. B. Cowan at the time said contracts were executed by Cowan and Carruthers, and Cowan and Gary & Smith, for the erection of the building?" The objection is based upon the ground that this

special issue contains a mixed question of law and fact, and not a question of fact only. We will discuss this assignment in connection with the ninth.

The ninth assignment is as follows: "The court erred in giving the charge requested by plaintiffs, marked 'plaintiffs' special charge No. 1,' in that (1), where a case is tried on special issues, no charge on the law of the case should be given; (2) the charge was erroneous in not making the question of business homestead depend on abandonment of the property as homestead, instead of making it depend on intention to occupy the lot in the future."

The plaintiffs in error, in order to defeat the mechanic's liens claimed by defendants in error, alleged in their answer, by way of avoidance, in effect, that the property was the business homestead of Cowan at the time the building contracts sued on were made, and that the wife of Cowan did not sign and acknowledge the same, and therefore said contracts never became effective as mechanic's liens on the property. This plea, under our laws, would have defeated the mechanic's liens claimed, if it had been found by the jury to be true. The evidence tended to prove that on the 25th day of July, 1891, the property was Cowan's business homestead; that the storehouse was on that day destroyed by fire; that he was a married man and the head of a family, and resided in Dallas. The evidence was sharply conflicting as to whether he rebuilt the storehouse for the purpose of renting it only, or with the purpose of again occupying it as his place of business as a merchant.

On the subject of the submission of special issues to the jury, Sayles' Civil Statutes, 1897, provide as follows:

"Art. 1330. A special verdict is one wherein the jury find the facts only on issues made up and submitted to them under the direction of the court.

"Art. 1331. The special verdict must find the facts established by the evidence, and not the evidence by which they are established; and it shall be the duty of the court when it submits a case to the jury upon special issues to submit all the issues made by the pleading. But the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or a writ of error unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding."

In connection with this special issue as submitted, the court instructed the jury as follows:

"In answering the seventeenth special issue, you are instructed that defendant Security Mortgage and Trust Company, and H. A. Kahler, the receiver thereof, and W. J. Betterton, to defeat the mechanic's lien herein asserted upon the property described in the petitions of plaintiffs and interveners, claim that said property was at the time the contracts

were made between Cowan and Carruthers, and between Cowan and Gary & Smith, for the erection of said building, the business homestead of said J. B. Cowan, that Cowan was then a married man, residing in Dallas, and that his wife did not sign and acknowledge the said contracts.

"The undisputed evidence shows that said J. B. Cowan was, at the time said contracts were executed, a married man, and residing with his wife in the city of Dallas, and that his wife did not sign and acknowledge said contracts or either of them.

"You are therefore instructed, that if you find from the evidence that at the time said contracts were executed it was then the intention of said J. B. Cowan in having said house erected to occupy and use the same, at the time of its completion or within a reasonable time thereafter, as a place in which to exercise or carry on his business as the head of a family, then you will answer that the same was his homestead.

"On the other hand, if you find from the evidence that at the time said contracts were executed it was not the intention of said J. B. Cowan to occupy and use said building when completed, within a reasonable time thereafter, as a place to exercise or carry on his business as the head of the family, then you are instructed that it was not his business homestead, and in that event you will answer that said building was not the business homestead of said Cowan."

The plea of plaintiffs in error raising the homestead question was, substantially, that on the 25th of July, 1891, when the house burned, the property was the homestead of Cowan, and that he had not abandoned the same at the time the building contracts of September 15 and 16, 1891, were signed, but on the contrary, he was rebuilding with the purpose of again occupying the house and carrying on his business as a merchant, and the wife failed to sign or acknowledge said building contracts. This plea was argumentative, but the gist and effect of it was that the property was his homestead at the time the building contracts were executed, and being such, and the wife failing to sign, no lien was effected thereby. The *fact*, then, to be determined under this plea was, whether it was his homestead at that time. This fact depended upon certain other facts which the law declares must exist in order to constitute the property the homestead of Cowan. The statute (article 1331) requires that "the special verdict shall find the facts as established by the evidence, and not the evidence by which they are established."

We think the special issue was properly submitted, and also that the special charge was exactly correct under the pleadings and evidence, and was necessary to inform the jury how to determine the question of homestead as submitted to them. We therefore overrule both the eighth and ninth assignments of error.

The tenth assignment is without merit, and is overruled.

The twelfth assignment of error is as follows: "The court erred in its second conclusion of law, in concluding that the lot should be sold at all, and that the house and lot should be sold together, and the proceeds divided between the plaintiff and the interveners on the one side and the

plaintiffs in error on the other side, and in rendering judgment to that effect; for that the evidence and the verdict of the jury and the court's fourth conclusion of law established the fact that the lot had been legally sold out under foreclosure of a lien superior to that of the plaintiff and interveners, before suit was brought, and bought in by W. J. Betterton, and thereby the second lien of plaintiff and interveners on the lot had been destroyed."

We think it is unnecessary to decide whether the sale made by the mortgage company to Betterton, by its trustee, in the foreclosure of its prior vendor's lien for $20,000, extinguished the secondary mechanic's liens of Carruthers and Gary & Smith upon the lot, old wall and vault, because the decree nowhere declares any secondary lien in their favor thereon, evidently for the reason that it was clear that the proceeds of the sale of the same would not pay one-half of the prior vendor's lien against them; and we seriously doubt the correctness of the proposition when applied to mechanic's liens of which the parties had notice.

But in so far as the assignment questions the correctness of the decree ordering a sale of the lot and building as a whole, and directing a pro rata distribution of the proceeds among the several owners or lien holders, we are clearly of opinion that it must be overruled; for, whatever may be the law in other States and countries, it is now well settled in Texas that in cases involving foreclosure of the mechanic's lien upon a building, where a prior lien for the purchase money existed upon the lot at the time the mechanic's lien was fixed, it is proper for the District Court to decree both lot and building to be sold together as a whole, and the proceeds pro rated between the lien holders on the lot and those holding liens on the building, where the court finds that the building can not be removed from the lot without great loss, damage, or expense. Bank v. Hotel Co., 89 Texas, 332, 34 S. W. Rep, 730; Moore v. Blagge, 38 S. W. Rep., 979; Hotel Co. v. Griffiths, 88 Texas, 574; 33 S. W. Rep., 652.

We are therefore of opinion that the judgment in this case ought to be affirmed, and order it accordingly.

*Affirmed.*

Writ of error refused.