**SLOAN v. SLOAN et al.**

No. 2452.

Court of Civil Appeals of Texas. El Paso.
Oct. 23, 1930.

Rehearing Denied Nov. 13, 1930.

514

Minor Moore, of Los Angeles, Cal., and Wright & Yowell and Gibbs & Lewis, both of San Angelo, for plaintiff in error.

Whitaker & Peticolas, of El Paso, and B. Frank Haag, of Midland, for defendants in error.

WALTHALL, J.

Mrs. Josephine Sloan, also known and referred to in the trial of this case as Mrs. Josephine Knight, brought this suit in Midland county, Tex., against William E. Sloan, Ina Belle Hightower and husband, C. C. Hightower, D. V. Smith, S. S. Owen, and Joe H. Smoot, alleging that, before the death of S. A. Sloan, she and S. A. Sloan had entered into a partnership agreement to share equally in everything he thereafter amassed in his business, and that he did thereafter amass the properties involved in this suit for which she sues. Plaintiff also sues in the alternative alleging that, after the making of said partnership agreement, on or about December 24, 1925, plaintiff and S. A. Sloan, entered into the marriage relation in the state of Texas, agreeing to become husband and wife, consummating the agreement by cohabitation, and thereafter living together as husband and wife in pursuance of said agreement, and as a partner of S. A. Sloan, and, in the alternative, as the wife of S. A. Sloan, she sued to recover the properties described. Plaintiff also sues to recover a diamond ring which she alleges she owns in her own right and independent of the other alleged relationships with S. A. Sloan, deceased.

We think a more extended statement of the issues tendered by the pleadings will serve to a clearer understanding of the points at issue. They are substantially as follows:

"That prior to the death of plaintiff's former husband, Mr. Knight, in December, 1923, the said Mr. Knight and Mr. S. A. Sloan, hereinafter mentioned, were associates and

partners in the oil business; that during the year following plaintiff advanced at various times several sums of money to the said ·S. A. Sloan, and in September, 1924, after the said S. A. Sloan, who was then without funds, had called upon a number of friends and relatives in California for money to return to Texas for further engaging in the oil royalty and lease business and had been refused by all of them, he called upon plaintiff for financial assistance and upon her furnishing him with Five Hundred (·$500.00) Dollars, at this crisis, he entered into a partnership agreement with plaintiff under which agreement the two were to thereafter share equally in everything he amassed in his business; that with said money, the said S. A. Sloan did return to Texas immediately and engaged in the oil, royalty and lease business and thereafter amassed the small fortune of properties hereinafter specifically described.

"2. That shortly after the making of said partnership agreement, to-wit, on or about December 24, 1925, the said S. A. Sloan and plaintiff being drawn more closely together, entered into the marriage relation in the State of Texas, agreeing to be husband and wife, consummating the agreement by cohabitation, and thereafter living together as husband and wife, in pursuance of said agreement.

"3. That during the existence of said marital relation the said S. A. Sloan and plaintiff accumulated a large community estate, of which the following is a part, to-wit: (Description omitted as not necessary here.) ·

"An undivided one-half interest in the following described properties of which defendant D. V. ·Smith, owns the other one-half, to-wit: (Description omitted as not necessary here).

"Also an undivided one-half interest and property right in certain contracts executed November 27, 1928, between S. A. Sloan and D. V. Smith, first parties, and Harry Steinberger and Clyde Steinberger, second parties; and by Amerada Petroleum Corporation, first party, and S. A. Sloan, second party, executed September 13, 1928, and supplemented November 1, 1928; the other one-half interest in said contracts being owned by defendant D. V. Smith; which said contracts are hereto attached, marked Exhibits "A. B. and C." respectively, and made a part hereof for the purposes of describing the properties, and interest of the parties, and for all other proper purposes.

"4. That on or about January 1, 1929, the said S. A. Sloan died intestate in Mitchell County, Texas, and thereupon plaintiff became the owner thereof, as well as of any other property left by the deceased; and, in the alternative, in the event it be found that such property is not community as hereinbefore alleged, plaintiff says that an undivided one-half of all of same belongs to her by virtue of said partnership.

"5. That at the time of his death the said S. A. Sloan had in his possession a diamond ring of the value of Twenty-Five Hundred ($2500.00) Dollars, which was and is the sole and separate property of this plaintiff, but the possession of which the defendants, William H. Sloan and Ina Belle Hightower now hold.

"That the defendants, William H. Sloan, Ina Belle Hightower and Joe H. Smoot, are claiming some right, title or interest in the properties described above as belonging .to this plaintiff; that although such claims are without foundation in law, they cast a cloud upon plaintiff's title.

"Wherefore, plaintiff prays that defendants be cited to appear and answer this petition; that on trial hereof plaintiff have judgment against the defendants, William H. Sloan and Ina Belle Hightower and husband, . C. C. Hightower, for the title and possession of said diamond ring and of all of said properties alleged above as being the community property of S. A. Sloan, deceased, and this plaintiff, in the alternative, prays that she have judgment against the defendants, William H. Sloan and Ina Belle Hightower and husband, C. C. Hightower, for the title and possession of an undivided one-half interest in and to all properties, of whatsoever kind and wheresoever situated left by the said S. A. Sloan, deceased, for a partition of said properties and the entry of proper orders to that end. In all events, she prays judgment for her costs, for all other and further relief, general and special, in law and equity, to which she may be entitled.

"Attached to the petition was the contract between S. A. Sloan and D. V. ·Smith on the one part and Messrs. Steinberger on the other part, which is omitted as not being necessary for an understanding of the issues herein involved.

"Defendants answered by general denial, and specially answering denied that the plaintiff and the deceased, S. A. Sloan, ever cohabited or lived together, but alleged that if they ever did cohabit or live together same occurred in the State of California, and not in Texas, and that under the laws of California cohabitation and living together as husband and wife do not, and did not at the time alleged, create the relation of husband and wife.

"Defendants set out in their pleadings, in full, the provisions of the laws of the State of California which clearly render illegal what is commonly and generally known as common law marriage. Among the provisions plead and proven by the defendants were the following (Civ. Code, §§ 55, 68):

" '55. Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making that contract is necessary. Consent alone will not

constitute marriage; it must be followed by a solemnization authorized by this code.'

" '68. Marriage must be licensed, solemnized, authenticated, and recorded as provided in this article; but non-compliance with its provisions by others than a party to a marriage does not invalidate it.'

"Also those provisions of the Statutes requiring the issuance of a marriage license and due solemnization of. the marriage ceremony by an officer, minister or priest and issuance of marriage certificate.

."Defendants further specially plead in their answer as follows:

"Defendants say that the plaintiff and the said S. A. Sloan never were married as required by any of the articles and sections above set out, that no marriage between them was ever solemnized as required by said laws, no license was ever issued, for their marriage by the county clerk of any county in California or elsewhere, no application for any marriage license, was ever made and no notice of intention of marriage was ever given by the plaintiff and the said S. A. Sloan, deceased, or anyone for them, and they were never joined in marriage, and no marriage ceremony was ever solemnized or celebrated as required by said provisions and said laws, before any person authorized by said laws to perform. said ceremony, or by anyone else, and that the plaintiff and S. A. Sloan, deceased, did not carry out any of the provisions of said laws hereinabove set out. That ever since the death of her husband, Ray Knight, plaintiff has been a resident citizen of California.

"That if the plaintiff ever did cohabit with the said S. A. Sloan, deceased, which is not admitted, but denied, they did so surreptitiously and secretly, and intermittently and the relation between them was not that of husband and wife, and was never intended to be so, but was a meretricious one; and was never intended to be anything more than such.

"These defendants say that the said S. A. Sloan died intestate in Mitchell County, Texas, on or about January 1st, 1929, leaving as his only heirs at law, his brother and sister, being the defendants, William H. Sloan and Ina Belle Hightower, and that there are no debts and no necessity for administration of the estate. That at the time of his death, he owned and was seized and possessed of all the properties, and the interests in the properties set out in plaintiff's petition, and also the diamond ring described in said plaintiff's petition; that as to the NW ¼ of Section 21 Block 29, Tsp. 1 South, T & P R. R. Co., survey, described in plaintiff's petition, the said S. A. Sloan, at the time of his death, owned an undivided one-eighth interest, and S. S. Owen owned an undivided one-eighth interest, and the other undivided six-eighths was owned and belonged to, and. was the property of defendant, Joe H. Smoot.

"Defendants William H. Sloan and Ina Belle Hightower, further state that it is not true that the said S. A. Sloan, deceased, ever entered into any partnership agreement with the plaintiff or agreement for joint acquisition of property as alleged in plaintiff's petition, and further say that if any such agreement as alleged was ever entered into, which is not admitted; but denied, same was void, because it was not in writing.

"Defendants further say that it is not true that plaintiff is the heir of S. A. Sloan, deceased, and they further deny that she is authorized to file suit as the heir of S. A. Sloan, deceased.

"And these defendants, William H. Sloan, and Ina Belle Hightower, joined pro forma by her husband, C. C. Hightower, by way of cross action against the plaintiff, allege and would with respect show to the Court:

"That they own said properties and interests in said properties above referred to, as the only heirs of the said S. A. Sloan, deceased, and that the claim set out in plaintiff's petition constitutes a cloud in the title of said defendants, William H. Sloan and Ina Belle Hightower.

"Said defendants would further, with respect, show the Court, that as to the diamond ring set out and described in plaintiff's petition, and for which plaintiff sues, same, prior to the date hereinafter set out, had been pledged to the San Francisco Remedial Loan Association, a corporation of San Francisco, California, as collateral security for a loan which she, the said plaintiff, had obtained from said corporation, and the said corporation held a valid lien upon said ring as security for said indebtedness.

"That on or about the dates hereinafter mentioned, S. A. Sloan, deceased, paid at the special instance and request of the plaintiff, the following amounts, as interest and principal on said indebtedness, to-wit: September 3, 1926, $193.68; March 30, 1927, $160.44; April 12, 1927, $26.74; November 7, 1927, $187.18, and July 14, 1928, $2911.86, making a total amount advanced by the said S. A. Sloan, deceased, the sum of $3479.90 all at the special instance and request, and for the use and benefit of the said plaintiff, which the said plaintiff then and there became bound and promised to pay, and if· the said defendants are mistaken in alleging the ownership of said ring in S. A. Sloan, deceased, and in them as his heirs, then they say that the plaintiff became bound and promised to pay S. A. Sloan, deceased, the amounts as aforesaid, and the said S. A. Sloan, deceased, and the defendants as his successors and heirs, became entitled to be subrogated to the lien of the said San Francisco Remedial Loan Association."

Defendants ask judgment, William H. Sloan, Ina Belle Hightower, and her husband ask judgment for title and possession of all the

property involved in the controversy, and for removal of plaintiff's claim from the title of said property; as to the diamond ring, in the event they fail to recover for the ring, they ask judgment for their debt, for a lien upon said ring as security for said debt, and a foreclosure of the lien and a sale of said ring.

On issues submitted to the jury, the jury found:

(1) The plaintiff and S. A. Sloan did not agree and consent together in Texas to become husband and wife on or about December 24, 1925.

(2) Submitted conditionally and not answered.

(3) Plaintiff and S. A. Sloan did not enter into such a partnership relation during or about the month of September, 1924, to share equally in the properties thereafter accumulated by S. A. Sloan.

(4) Submitted conditionally and not answered.

(5) Plaintiff does not own the diamond ring sought by her in her petition.

(6 and 7) Submitted conditionally and not answered.

Judgment was entered for defendants.

### Opinion.

This appeal is prosecuted by writ of error. We will designate plaintiff in error as plaintiff, and defendants in error as defendants.

■■ For the purpose of showing that the marriage agreement of plaintiff and S. A. Sloan was made and consummated as alleged, plaintiff offered to read in the deposition of a witness that witness had received a letter and postcards purporting to have been signed by S. A. Sloan, and had read the question: "What was said in it?" When objection was made that the witness' deposition showed witness could not identify the writing as that of Sloan, the writing was not produced, and no other witness having identified the writing as that of Sloan, the court sustained the objection, and the ruling is assigned as error. The exclusion of the writing shows no error. The rule is general that, to be admissible as evidencing the execution of the writing as that of the writer, the identity of the writing as that of the writer is a prerequisite to its admission in evidence. A writing not certified, or not shown to have been authorized by the purported writer, or its genuineness not otherwise authenticated, or not shown to be what is called a reply letter or communication where the rule is relaxed, is not admissible. 22 C. J. p. 906 et seq.; Henry v. Vaughan, 46 Tex. Civ. App. 531, 103 S. W. 192; 10 R. C. L. p. 1151.

The fact sought to have been proved by the letter, that plaintiff and S. A. Sloan said they were "just having a good time and en-joying ourselves," was, we think, a provable fact, but the point of objection made is as to the admissibility of the evidence by which the fact is sought to be established. Witness stated in the deposition that she did not know the handwriting of Sloan.

■ Plaintiff offered to prove by the witness that, after receiving the letter purporting to have been written by plaintiff and S. A. Sloan, witness "thought they were married."

The court permitted the witness to testify that plaintiff told the witness that plaintiff and Sloan were married in Texas, but refused witness to state that witness "thought they were married."

■ A witness cannot state the impression made on the witness by oral statement. Gulf, etc., R. Co. v. Fox (Tex. Sup.) 6 S. W. 569; 22 C. J. 515, § 603, and note 39; Biering v. Wegner, 76 Tex. 506, 13 S. W. 537; Shaw v. Gilmer (Tex. Civ. App.) 66 S. W. 679.

■■ Objection is made to the admission in evidence of witness S. A. Owen: "At that party I did not hear Sam Sloan (S. A. Sloan) make any remark to anybody about Mrs. Knight being his wife" (the wife of S. A. Sloan). At the dinner party at Los Angeles were witness and his wife, Mrs. Knight, and others, including S. A. Sloan. The time was in September, 1926. Other witnesses had stated they had heard S. A. Sloan make remarks which inferentially would lead to the belief that plaintiff was his wife. The witness had stated his intimate acquaintance and business relation with S. A. Sloan for years previous to the dinner party. Plaintiff had made the witness a party defendant in this suit, but prays for no relief against him. Plaintiff does not suggest in her brief that the evidence complained of is in violation of Article 3716, R. C. S. It seems that, under the construction of that statute by our Supreme Court, in Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030, one having no interest in common with the party calling him as a witness, though nominally a party, is competent to testify as to statements and admissions against interest by a deceased person. Other cases we have reviewed, referred to by defendants, as to the competency of a witness without interest to testify, are, Kahler v. Carruthers, 18 Tex. Civ. App. 216, 45 S. W. 160, and Gurley v. Hanrick's Heirs (Tex. Civ. App.) 139 S. W. 721, where it was held that the heirs, having conveyed all their interest in the matters involved in the suit, and being only nominal parties, could testify to statements of, or transactions with, deceased. Also Cox v. McClave (Tex. Civ. App.) 22 S.W. (2d) 961; Commerce Farm Credit Co. v. Albritton (Tex. Com. App.) 17 S.W.(2d) 784. So that, while the assignment suggests that the evidence is violative of the above article of

the statute, though not included in the proposition, we have thought to review it. Is the evidence otherwise objectionable? One of the material facts to the issue that plaintiff was the common-law wife of the deceased, S. A. Sloan, was that deceased acknowledged and held plaintiff out to the world as his wife. The deceased had given a dinner at a hotel to a number of his friends; among those present were plaintiff's witness, deceased, and others. Other witnesses had testified to remarks made by deceased tending to show an acknowledgment on the part of deceased that plaintiff was his wife. Could this witness say that he was at that same dinner party and did not hear deceased make any remarks to anybody about plaintiff being his wife? True, it is not claimed that deceased, on that occasion, was making a public announcement to his friends present that plaintiff was his wife. The statement is negative in character, but that goes only to its probative force. We see no reason why the witness' failure to hear a remark inquired about may not be testified to when the circumstances are such as to properly lead to the inference that the remark would have been heard had it actually been made, in opposition to affirmative statements that such a remark or declaration was made. We have concluded that the admission of the evidence was not error. 22 C. J. 168, § 94, note 6.

■ Plaintiff offered the deposition of Ray Tudor, the room clerk of the Paso del Norte Hotel at El Paso, to show by the registration sheet and room card used by the hotel that S. A. Sloan was registered at said hotel on December 24 to 26, 1925, and occupied rooms 500 and 502, and that plaintiff, as the wife of S. A. Sloan, at that time occupied the said rooms.

Plaintiff's direct interrogatory No. 14 reads: "Please state whether or not from your records, the wife of S. A. Sloan registered in said hotel from December 24th to 26th, inclusive, and if so, what room or rooms she occupied."

By subsequent interrogatories the witness was requested to attach to his answers the original record made by the clerk concerning the matters inquired about, and, if that could not be done, then attach a photostatic copy, and explain the writing and figures thereon. In answer and explanation of the system of registration kept, the witness said: "The guest registered on a large sheet or loose leaf, the hotel clerk transferred the registration to a room card, upon which was placed the guest's name, the room number, the date of arrival and the rate per day."

To interrogatory 14, the witness answered: "Our records show that Mrs. Sloan occupied rooms 500 and 502 from December 24th to December 26th, inclusive."

The original record was not attached to witness' answers; a photostatic copy was attached. Witness had no personal acquaintance with plaintiff or S. A. Sloan, and had no knowledge other than from the hotel record that either had registered at the hotel. At the time inquired about, it was not the custom of the hotel for the customer registering to sign the card, and the customer does not see the card; the card is not made up in his presence. The witness did not know that S. A. Sloan ever saw the original or a copy of the original record stating the room account made by the hotel clerk.

The court excluded the interrogatories and answers of the witness Tudor, briefly stated above, on objection that witness was not the custodian of the hotel records and did not testify that same were correctly kept; that witness only had access to them; that the whereabouts of the records custodian was not shown; that it was made to appear that the records were not made by witness; and that witness had never seen either plaintiff or S. A. Sloan.

To authorize the introduction in evidence of the registration slip and cards kept, it must be proved that the registration slip and card were regularly entered and that the registration entries were correctly kept. Stark v. Burkitt, 103 Tex. 437, 129 S. W. 343; Panhandle & S. F. Ry. Co. v. Arnett (Tex. Civ. App.) 219 S. W. 232, 233, and cases cited; Locke v. Wallingford (Tex. Civ. App.) 265 S. W. 1086, where it was held that scale tickets of a grain elevator were inadmissible where not proved to be correctly kept.

The hotel clerk who apparently made the registration entries and the card did not testify, nor was his absence or whereabouts accounted for. As suggested by defendants in their brief, without proof there would be no means of knowing how the bookkeeper or the one who made the entry on the registration card arrived at the conclusion that the person occupying the rooms with S. A. Sloan was his wife. In the absence of proof that S. A. Sloan made or authorized such entry, he would not be bound by it. The use sought to be made by the registration entry and the card was that S. A. Sloan and plaintiff, as his wife, occupied the rooms as indicated. The record does not show the facts necessary to admit the registration slip or card, and their exclusion presents no error.

■■ Plaintiff alleges that she and S. A. Sloan entered into a partnership relation in September, 1924, and that the marital relation was entered into about December 24, 1925; that during the existence of the marital relation the property involved here was accumulated; that S. A. Sloan died intestate on January 1, 1929; and that by reason thereof plaintiff became the owner as surviving wife,

519

or half owner, as partner, as the facts might be found to be, of said properties. As evidence of admission of S. A. Sloan of plaintiff's partnership relation with S. A. Sloan, and of their marital relation, plaintiff offered in evidence parts of two letters marked, respectively, "Letter K" and "Letter O." Each letter was identified as having been written by S. A. Sloan to plaintiff. Letter K was dated January 5, 1924. The part of the letter K offered in evidence reads: "Cold, Oh my, how cold it has been; ice, icicles, and more ice everywhere. But I won't worry any; it looks like a cinch for a sale here whereby I will get some real money, and also retain our interest that the other fellow will have to look out for."

The letter was excluded on objection that same involved testimony as to a transaction with deceased, S. A. Sloan.

Letter O was not dated. The part offered by plaintiff reads: "I have never worked so hard in my life, day and night. I am doing something or trying to do something. Our well will get started sometime before the first, or shortly thereafter. I am coming out to see you."

Letter O was also excluded on the same objection as was letter K.

We have concluded that neither letter should have been excluded on the ground stated. We think, however, that no reversible error is shown. The only parts of the letters which seem to be at all material to either issue of the partnership relation or the marital relation are the expressions "our interest" in letter K, and "our well" in letter O. There is nothing in either letter or the evidence in the record that we have found that sufficiently identifies or indicates the interest or well referred to, or which interest or well owned or held by S. A. Sloan in either a partnership or marital relation with plaintiff. The verbiage of letter K, in the expression "the other fellow will have to look out for," in connection with the "our interest," would indicate that "the other fellow" was some one other than plaintiff.

As stated above, letter O has no date, and no evidence gives it a date. The letters do not identify the interest of property referred to as "our interest," nor the well referred to as "our well."

The record shows that from June 23, 1923, to July, 1925, S. A. Sloan was the president of the Sloan Oil Company, at which last date the assets of the company were sold and the company dissolved. Within that period of time "letter K" was written. It seems the barest presumption that Sloan referred to plaintiff as a party at interest in either letter, in view of the entire record. For reasons stated, we regard the letters as of no probative value.

■ No error is shown in permitting Dr. P. C. Coleman to answer in the affirmative that, "if Sam Sloan had made application to the Colorado National Bank in June, July, August, September and October, 1924, for $500.00 loan, was the financial rating of S. A. Sloan such that the bank would have loaned him the money?"

Plaintiff pleaded and offered evidence to prove that in September, 1924, S. A. Sloan was in California without funds and, without avail, called upon a number of friends and relatives in California for money to return to Texas for further engaging in the oil royalty and lease business, and called upon plaintiff for financial assistance, when she loaned him the $500, for and by reason of which he and plaintiff entered into the partnership relationship alleged.

Other witnesses, officers of the corporation of which Sloan was president, and his business associates, had testified without objection to S. A. Sloan's financial standing.

■ Miss Katherine Justice, a young lady, was permitted to testify that at Colorado, Tex., on Christmas Eve, a short time before S. A. Sloan was killed in an airplane accident, she and S. A. Sloan became engaged to be married and set the date of the wedding; that at that time Sloan told her that the diamond ring in controversy was given him in part payment of a debt. The statement was not objectionable, as suggested by plaintiff, as being self-serving, hearsay, or made out of the presence of plaintiff.

S. A. Sloan was at that time in possession of the ring, and his statement was in explanation of the nature and character of his possession. The rule is stated in volume 22, C. J. pp. 270 and 271, with many authorities cited in notes, in this state and elsewhere; also in volume 10, R. C. L. p. 894, § 166, stating the rule to be that declarations as to the ownership of property, made by a person in possession thereof, are admissible in evidence upon an issue as to such ownership as part of the res gestæ, showing in what capacity the declarant holds. We need not review the many cases. It was undisputed that plaintiff in February, 1926, borrowed in excess of $2,500, and as security pledged her jewelry, including the ring in controversy; that S. A. Sloan, in July, 1928, paid the loan in full. We think under the above-cited authorities that the declaration of S. A. Sloan to Miss Justice that the ring was given him as part payment of a debt admissible as a declaration consistent with his possession and claim of ownership of the ring, in view of the evidence offered by plaintiff to the effect that S. A. Sloan had paid and redeemed plaintiff's pledge as a gift to plaintiff and that plaintiff had given the ring to S. A. Sloan to sell for her. In Whitney v. Wheeler, 116 Mass. 490, and in

Gordon v. Munn, 87 Kan. 624, 125 P. 1, Ann. Cas. 1914A, 783, it is held, in effect, that, where there is ground for doubt as to the intent with which a delivery of possession of property was made, whether as a gift or otherwise, evidence tending to show the state of mind and purpose inconsistent with a gift, may have a legitimate bearing upon the case to affect the inferences to be drawn from the facts and circumstances attending the transactions. The declaration of the deceased, S. A. Sloan, to Miss Justice should be heard as a counter declaration to the evidence offered by plaintiff that Sloan redeemed the ring as a gift to plaintiff. To the same effect are Bailey v. Look (Tex. Civ. App.) 174 S. W. 1010; Ætna Insurance Company v. Eastman, 95 Tex. 37, 64 S. W. 863; Houston & T. C. R. Co. v. Fox, 106 Tex. 317, 166 S. W. 693.

The court was not in error in refusing to charge, as requested, "that the diamond ring is the property of plaintiff." If error, it was invited error, since plaintiff also requested the submission of a charge in substance the same as that given: "Is the diamond ring in controversy the property of plaintiff?" The evidence required the issue of ownership be submitted to the jury.

The court's charge that "the possession of personal property is prima facie evidence of title until a better right is shown thereto by the preponderance of the evidence" is a correct statement of the law under the facts. The burden of proof was on plaintiff to show title in herself, which she seems not to have done, but apparently rested her claim of ownership on a previous prior possession. It is said by our Supreme Court in Watkins v. Smith, 91 Tex. 589, 45 S. W. 560, that possession is not a rule of evidence, and founded upon the principle that, since ownership is a usual concomitant of possession, it is a reasonable prima facie inference that the possessor of property is its owner. Keys v. Mason, 44 Tex. 140; Davis v. Loflin, 6 Tex. 497; Andrews v. Beck, 23 Tex. 455.

In Randell v. Robinson (Tex. Civ. App.) 172 S. W. 735, 736, it is held that presumption of title by reason of possession "continues until it is affirmatively shown that defendant has no title, or the plaintiff establishes a right to the exclusive possession, based upon a legal or an equitable title to the property, good as against the world."

Plaintiff has not complained of the sufficiency of the evidence to sustain the jury's findings. We have not separately discussed every proposition presented, but we have considered them, and they are overruled.

The case is affirmed.